658 So.2d 875 (1995)
John DELOACH
v.
STATE of Mississippi.
No. 92-KA-0080-SCT.
Supreme Court of Mississippi.
July 20, 1995.
Martha W. Lewis, Columbus, for appellant.
Michael C. Moore, Atty. Gen., Jackson, Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
On November 16, 1989, John Deloach was convicted of the crime of business burglary, pursuant to Miss. Code Ann. § 97-17-33 in the Circuit Court of Lowndes County, Honorable John M. Montgomery presiding. Deloach was sentenced as an habitual offender to serve a term of seven (7) years imprisonment.
Aggrieved, Deloach perfected this appeal and assigns the following as error:
THE COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR A DIRECTED VERDICT BECAUSE THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO SUPPORT A CONVICTION IN THAT IT FAILED TO PROVE DEFENDANT GUILTY BEYOND A REASONABLE DOUBT AND TO THE EXCLUSION OF EVERY REASONABLE HYPOTHESIS CONSISTENT WITH INNOCENCE.

STATEMENT OF FACTS
Don Harding, a vocational director for the Lowndes County School, testified that on or about April 28, 1989, the vocational complex was found burglarized. Damage to the complex included broken glass panes, broken doorknobs, and general vandalism of the school office. The "building and trade" laboratory (hereinafter "B & T Lab"), which is a part of the vocational complex, was also damaged. The door to the B & T Lab was torn apart, and the doorknob was missing. Inside the B & T Lab, there were two vending machines (one drink and one snack) located in a locked storage room. The vending machines were placed in the storage room solely for the use of a night class which had ended two to three weeks prior to the burglary. Deloach was not a student at the school.
Harding was responsible for locking the building, and he had checked the building between 4:00 p.m. and 4:30 p.m. the night of the burglary. The damage to the vending machines was consistent with damage to other areas of the complex. Harding testified *876 that the lock mechanism of the drink machine was missing, and the door was hanging on the hinges with the changer itself dismantled. Additionally, Harding testified that there was no money in the vending machine changers following the burglary. Harding reported that approximately fifty ($50) dollars was taken from the machines.
Besides the damage to the vending machines, there were keys, other money and tape recorders missing. Vending machines located in the auditorium were also found burglarized.
Richard Jones, an investigator at the time of the incident, testified that he lifted latent prints found on the side of the vending machine located in the B & T Lab. These prints lifted by Jones were turned over to Ron Cook, the head investigator of the Lowndes County Sheriff's Department.
Through Investigator Cook's testimony, various photographs of the crime scene were introduced. Cook turned twenty-two (22) fingerprints and Deloach's fingerprint identification card over to the Mississippi Crime Laboratory. The crime lab results indicated that one palm print taken from the vending machine matched the prints of Deloach.
Ron Smith, an expert in latent fingerprint examination and an employee with the Mississippi Crime Laboratory, testified that the lab results positively matched the latent prints with the known prints of Deloach. Smith called the fingerprint test 100% accurate since no two people have identical fingerprints. However, Jones did not testify as to the expected life of a latent fingerprint or the age of such a print. At the conclusion of Smith's testimony, the State rested its case.
Deloach moved the lower court for a directed verdict, asserting that the proof was insufficient to support a verdict of guilty beyond a reasonable doubt. The court denied this motion. Thereafter, Deloach elected to not testify, and the defense rested without presenting any witnesses.

DISCUSSION OF LAW

DID THE COURT ERR IN OVERRULING DEFENDANT'S MOTION FOR A DIRECTED VERDICT BECAUSE THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO SUPPORT A CONVICTION IN THAT IT FAILED TO PROVE DEFENDANT GUILTY BEYOND A REASONABLE DOUBT AND TO THE EXCLUSION OF EVERY REASONABLE HYPOTHESIS CONSISTENT WITH INNOCENCE?
We will address this issue in two parts.

A. WAS THERE SUFFICIENT EVIDENCE TO CONVICT THE DEFENDANT?
On appeal, Deloach contends that the only piece of evidence which placed him at the scene of the crime was a latent fingerprint found on a vending machine inside the complex. Deloach asserts that there was no testimony establishing when the fingerprint was placed on the machine and, as such, the evidence was insufficient to establish his guilt beyond a reasonable doubt.
"Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that from the evidence, taken in the light most favorable to the verdict, no reasonable hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." Williams v. State, 463 So.2d 1064, 1068 (Miss. 1985). Today, we conclude that the verdict must be reversed.
"The crime of burglary has two essential elements, the unlawful breaking and entering and the intent to commit some crime once entry has been gained." Murphy v. State, 566 So.2d 1201, 1204 (Miss. 1990). Here, the State had the burden of proving that Deloach unlawfully entered the school building and either stole equipment and money from the vending machines or had the intent to steal. In this case, we find the evidence to be entirely circumstantial. "The state [can] rely on circumstantial evidence, but where a case is based wholly on circumstantial evidence, the state must prove [Deloach's] guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence." Murphy, 566 So.2d at 1204 (emphasis in original).
*877 In Corbin v. State, 585 So.2d 713 (Miss. 1991), this Court reviewed the sufficiency of the evidence of a conviction for burglary. The evidence against the defendant in Corbin included: (1) that a grocery store was burglarized; (2) that an unidentified black male was seen dropping the stolen items; (3) that the fingerprints of the defendant were found on three of the six items recovered and (4) that the items were generally inaccessible to the public during business hours at the grocery store. Id. at 715. We stated, "[t]hese facts, standing alone, do not prove beyond a reasonable doubt that [the defendant] was the person who unlawfully entered the [grocery store] with the intent to steal merchandise in that business." Id. at 715. The Court commented that the state "did nothing to focus the possibilities of the fingerprints being concurrent with the robbery." Id. at 715-716.
The Court in deciding Corbin, relied in part on McLain v. State, 198 Miss. 831, 24 So.2d 15 (1945):
In McLain, the defendant was charged and convicted of the larceny of an automobile on the sole basis of his thumb-print being found on the rear-view mirror of the car. This Court, in ruling that appellant's fingerprint, without more, was not sufficient to uphold the conviction, stated:
In the case before us here the sole and only proof against the appellant consists of a thumb-print on the rear-view mirror, which is conclusive evidence of his identity, and that he had been in the car for some purpose; but evidence of identity and of presence alone is not equivalent to evidence of guilt of a particular crime, especially where several crimes could have been committed as to this car, but as to which a certain charge was made. The thumb-print here was not declaratory, as stated supra, of the nature of the crime, since it was not aided by other evidence identifying the particular crime, and did not exclude other crimes.

No witness testified to having seen appellant in Clarksdale on the night the car was stolen, or on the day it was recovered; and, as stated, there is no evidence in the record of any kind as to when, or under what circumstances, this print was made on the rear-view mirror.

Corbin, 585 So.2d at 716 (quoting McLain, 198 Miss. at 836-37, 24 So.2d at 16) (emphasis added in Corbin)]. Finally, this Court stated conclusively that "[f]ingerprint evidence as the sole and only proof of guilt is insufficient" and "must be coupled with some other evidence, especially so when the fingerprint was not found at the crime scene but on some object away from the scene." Corbin, 585 So.2d at 716.[1] This court reversed and rendered in both Corbin and McLain.
The case now before the Court is analogous to Corbin and McLain in the following ways: (1) the evidence presented established that Deloach only had access to the machine at some point in time; (2) there was no testimony which placed Deloach in the vicinity of the building; and (3) there was no evidence of any amounts of money found on or with Deloach.
"That the only evidence supporting a conviction is circumstantial does not mean the evidence is insufficient." Walton v. State, 642 So.2d 930, 932 (Miss. 1994). "[F]ingerprint evidence, coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime, will be sufficient to support a conviction." Wooten v. State, 513 So.2d 1251, 1252 (Miss. 1987). However, we do not find that the State met its burden in this instance. The State failed to address the very reasonable hypothesis that Deloach placed his palm print on the vending machine during a time when he had lawful access to the machine. There was no witness presented to testify that Deloach was seen in the vicinity of the complex. The State relies on the inference that if Deloach ever had access to the machines then it was necessarily at the time of *878 the burglary. There was no testimony presented as to Deloach's motive for the vandalism/burglary, not that such was necessary; although, it would have been helpful if known. Thus, we conclude that the evidence offered at trial, i.e., the palm print, was legally insufficient to support the conviction of Deloach.

B. DID THE TRIAL COURT ERR IN OVERRULING THE DEFENDANT'S MOTION FOR A DIRECTED VERDICT?
When considering the motion for a directed verdict, this Court must consider the evidence introduced in the light most favorable to the State, accepting all evidence introduced by the State as true, together with all reasonable inferences therefrom. McGee v. State, 569 So.2d 1191, 1192 (Miss. 1990). Defendant's sole challenge is that the State failed to prove he was the criminal agent. We agree. The only evidence there is to consider and establish in favor of the State is the palm print. Fingerprints answer only the question of identity. There must be additional evidence presented which would establish that the person identified is also the person who unlawfully entered the building with the intent to commit some crime, once entry was gained. We conclude that the evidence presented at trial was legally insufficient to support the conviction and we find that the trial court erred in denying Deloach's motion for directed verdict. We find the issues presented on appeal to be of merit. Accordingly, we reverse and render.
REVERSED AND RENDERED.
SULLIVAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
HAWKINS, C.J., dissents with separate written opinion joined by JAMES L. ROBERTS, Jr. and SMITH, JJ.
PRATHER, P.J., not participating.
HAWKINS, Chief Justice, dissenting:
I respectfully dissent.
As the majority notes in its factual statement, the Lowndes County School District owns a vocational training building, the "Lowndes County Vocation Complex," located on Highway 82 West in that county. Classes in auto mechanics, metal trades, and building trades are taught there. The building trades area, called the "Building and Trades Lab," has a wall between it and the other two areas for teaching auto mechanics and metal trades. In the Building and Trades portion of the complex, well over half the space is an open shop area, and on the other side an entrance area, an enclosed office, and in the corner a storage room. From outside there is a shop door and a regular door entrance into the shop area, and from the other side a regular door entrance from the outside. Two vending machines had been placed in the storage room.
Vocational training taught classes to students during the day, and there was also an evening class in the building trades for adults. The storage room was kept locked, and the soft drinks and food dispensed by these vending machines were only available to the night students.
On a routine Friday morning, April 28, 1989, Don Harding, Vocational Director, arrived at the complex. At that time at least two weeks had elapsed since the last evening class was taught in the Building and Trades Lab. Mr. Harding, as the majority notes, found two window panes had been knocked out, door knobs had been knocked off classroom doors, doors going into the metal and building trades areas, and doors going into the office areas. The door going into the building trade lab "had been just literally torn all to pieces; door knob knocked off the door." The glass pane going into the office area had been knocked out. Desk drawers had been pulled out and dumped. As to the coke and vending machines, Mr. Harding testified:
Yes, sir, we had put the coke and vending machine, uh, in the particular storage room in the Building-Trades Lab for the adult night class series for BEK construction. During the daytime hours, for daytime students, we kept this room locked to keep our daytime students out of there because *879 we had vending machines in another part of the building. Uh, the instructor that taught the night classes was given a key to this room and he would simply unlock it and let them in there during their break time at night, and then he would lock it back.
T.R. Vol. II, p. 42.
These machines in the storage room had been torn open. Mr. Harding described the coke machine, "Drink machine  basically, the lock mechanism was torn up. The machine was opened up. The changer was torn up. The, uh  that's, basically, what was torn up on the drink machine."
The record then reveals:
Q. Okay, when you say it was torn up, you had to prize the lock and the door came open? Did the door have to come open to get to the change machine?
A. To get to it you'd of had to have busted that door off to get in there. Yes, sir.
T.R. Vol. II, p. 56.
DeLoach was neither a student nor employee of any kind of the complex, and had no business or occasion to be in the building. If he had entered the premises during daylight hours or during evening classes on some lawful purpose when students and instructors were there, he would, of course, have been seen. At other times the complex was locked.
While dusting for fingerprints on the right hand side of the coke machine door along about the middle, the side that opened, Deputy Sheriff Richard Jones lifted the heel of a handprint which was positively identified as DeLoach's. Jones lifted several other prints off the machine, and he, along with another officer, lifted prints from other parts of the building. Other than DeLoach's, none were identified.
On August 25, 1989, the grand jury indicted DeLoach for burglary of the building with intent to commit larceny therein, and also as a habitual offender under the statute, he having been four times previously convicted, twice for larceny and twice for burglary.[1]
At trial the above facts were developed, and the defense offered no proof. DeLoach was convicted and sentenced to seven years imprisonment.

LAW
In this case there was a locked building, broken into, and in a storage room, also kept locked, there were two vending machines, which had been used only by adult students at a night class which had not been in session at least for two weeks on the night of April 27, 1989. DeLoach was not a student of any kind, and never had any business or any reason to be in the building, much less in the storage room in which these two machines were located.
On the right side of the coke machine, the side which opens, along about the middle DeLoach clearly had his hand. The majority holds that this handprint, unexplained, is still insufficient as a matter of law to make a jury issue on whether DeLoach was the burglar that night. This is where I respectfully part company with my colleagues.
How did the print get there? We live in a world of common-sense, and it is incredible to me that a jury was not entitled to pass upon whether DeLoach was innocent or guilty. Local law enforcement officers investigated this burglary, using such fingerprint equipment as they had. Lifting fingerprints is quite often impossible, and in this case there were other prints on the machine, and a number of other prints lifted in other parts of the building, none of which could be identified. This could be expected. The key question, however, is not what other prints were there, but what was DeLoach's handprint doing on the coke machine, and right there where the door was broken open?
Now, if this "busted open" machine upon which DeLoach's handprint was found had been out in the open in some filling station or supermarket, all we would have is a possibility *880 of DeLoach's guilt. But this is not what we have. We have a locked area in which DeLoach had absolutely no business being, and where no one had ever seen him, with his handprint on an area of the machine he obviously would have grabbed to burst or prize open.
There is but one reasonable, commonsense reason from this record for DeLoach's handprint being on this machine, and that is he either alone, or in conjunction with others, committed burglary and larceny. There is no suggestion, or even hint of any other explanation from this record.
All of us know from life's experiences that even the most overwhelming array of circumstances pointing to a person's guilt will dissipate completely upon an explanation by a witness with firsthand knowledge of what actually occurred. We have all observed matters or events which aroused our suspicion only to have it quickly evaporate upon discovering the truth. Circumstantial evidence of a person's guilt cannot survive in the face of a reasonable, truthful explanation of what actually occurred. And, it is only when there is no truthful explanation that one is not forthcoming. It is not human nature to withhold facts showing one is innocent in the face of circumstances pointing to one's guilt. Rather, it is when there is no innocent explanation that one is not forthcoming.
The majority can find no other reasonable hypothesis than that of guilt from this record. Not only would rank speculation be required to supply it, the majority would have to conjure such a hypothesis. The defense in this case significantly has not attempted to supply one.
Why shouldn't a jury be permitted to pass upon the case and decide DeLoach's guilt or innocence? It was not the State's responsibility to negate pure speculation, it manifestly is not the responsibility of this Court to conjure an alternative hypothesis. Yet this is precisely what the majority has done.
In sum, there is one overwhelmingly reasonable hypothesis from this record, and that is that DeLoach, either alone or in conjunction with others, burglarized this building. Beyond this there is nothing but a blank. Thieves do not operate around witnesses; their crimes must be committed with no one watching. Hence, most prosecutions for burglary and larceny must rely almost completely upon circumstantial evidence.
In a case in which the accused is the only person who can offer an explanation for incriminating evidence, there is nothing whatever wrong with a rule of law which states that such evidence, without reasonable explanation, is sufficient evidence from which a jury can find the accused guilty.
For example, a Jackson lady misses her diamond necklace. Shortly thereafter, the accused is found in possession of it. The law in this and other states is that this possession, without some reasonable explanation, is sufficient evidence from which a jury is authorized to find the accused guilty. Smith v. State, 278 So.2d 408 (Miss. 1973).
Another: A and B go into a room together. There is a shot fired, and A is seen walking out with a smoking pistol. B is dead with a bullet in him. Now, presumably this death could have occurred (1) by B's shooting himself and A picking up the pistol, or (2) by some accident, or (3) by A shooting B in self-defense. But, the only person alive who can tell the world precisely how B met his death is A. The law presumes A murdered B unless he offers some rational explanation. Malice is presumed from a killing with a deadly weapon. Because he is the only living person who can, the law puts the burden upon A to explain what happened, and unless he chooses to do so, a jury can find him guilty of murder. Blanks v. State, 547 So.2d 29, 33 (Miss. 1989); Russell v. State, 497 So.2d 75, 76 (Miss. 1986); Stokes v. State, 240 Miss. 453, 477, 128 So.2d 341, 350 (1961); Hughes v. State, 207 Miss. 594, 42 So.2d 805, 807 (1949); Smith v. State, 205 Miss. 283, 294, 38 So.2d 725, 726 (1949); see cases cited "Homicide," West Key No. 146.
With this highly incriminating evidence, why should this case be treated differently from those above cited? In the above example, if A did not see fit to explain how B actually got killed or the person in possession of the stolen necklace did not see fit to explain how he happened to have it, and a *881 jury convicted him, no appellate court would go out into the wild blue yonder to find some reasonable hypothesis of innocence. You would have to get into astronomy to compute the odds of DeLoach having some innocent reason for his having his hand on that door and yet not choosing to enlighten the court and jury. This handprint, without some explanation, was sufficient to authorize a jury, not this Court, to pass upon DeLoach's guilt.
If a defendant does not attempt to rebut incriminating facts he cannot, merely by remaining silent, escape the natural and reasonable inference deducible from such facts. For instance, if in a case of larceny the theft and unexplained or unsatisfactorily explained recent possession of the stolen property by the accused are shown, he cannot avoid the natural inference, deducible from such facts, that he is the thief, by failure or refusal to testify.
Tuttle v. State, 252 Miss. 733, 737, 174 So.2d 345, 346-47 (1965). See also McGilvery v. State, 497 So.2d 67, 68 (Miss. 1986); Rush v. State, 301 So.2d 297, 300 (Miss. 1974).
"The Fifth Amendment prevents the drawing of unfavorable inferences from the failure to testify; it does not prevent the drawing of affirmative inferences, or serve to rebut inferences that arise independently from other circumstances, unconnected with the defendant's failure to testify." U.S. v. Cotter, 425 F.2d 450, 452 (1st Cir.1970). Also,
[T]he defendants were not required to testify or to present any case at all, and the jury could not permissibly draw an adverse inference simply from their failure to take the stand. But the self incrimination clause does not elevate a defendant's silence ... to the level of convincing refutation. When a defendant has offered no [credible explanation], it may be reasonable for a jury to draw inferences from the prosecution's evidence which would be impermissible if the defendant had supplied a credible explanation.
United States v. Frank, 494 F.2d 145, 153 (2nd Cir.1974); U.S. v. Parness, 503 F.2d 430, 437 (2nd Cir.1974).
In Moore v. U.S., 271 F.2d 564, 568 (4th Cir.1959), the court held:
In a criminal case the accused is protected, at every stage of the trial, with a presumption of innocence and until he is proven guilty beyond a reasonable doubt by proper and competent evidence. No inference of guilt can be drawn from the mere fact that the accused did not testify in his own behalf. These are fundamental principles which require no citation of authority. But other principles have not been overlooked or disregarded in reaching our decision. Circumstantial evidence may support a verdict of guilty, though it does not exclude every reasonable hypothesis consistent with innocence.
Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).
If it be sufficient to support an inference of guilt and the defendant fails to offer a reasonable explanation consistent with innocence, such failure may be considered by the trier of fact... . It is not necessary, in appraising the sufficiency of the evidence, that this court be convinced beyond a reasonable doubt of the defendant... . The question is whether the evidence, construed most favorably for the prosecution, is such that a jury (or trial judge) might find the defendant guilty beyond a reasonable doubt.
Ohio v. Clay, 29 Ohio App.2d 206, 280 N.E.2d 385, 388 (1972):
Where the prosecution makes a probable case on an issue as to which a defendant has a peculiar knowledge of the facts and may easily prove them, an inference arises that the truth is with the prosecution. Williams v. United States, 170 F.2d 319 (5th Cir.1948), cert. denied 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442.
In Walker v. United States, 301 F.2d 94, 97 (5th Cir.1962), the Fifth Circuit Court of Appeals, citing Acuna v. United States, 74 F.2d 359, 360 (5th Cir.1934), held that a presumption "merely places the burden upon him (the defendant) as to matters peculiarly within his knowledge."
The majority cites Corbin v. State, 585 So.2d 713 (Miss. 1991), in which I dissented, which in turn cited as its sole authority McLain v. State, 198 Miss. 831, 24 So.2d 15 (1945), for the proposition that a conviction *882 could not stand solely upon fingerprints. McLain was decided 50 years ago, and the incriminating fingerprints were found on the rearview mirror of a stolen vehicle, which had been stolen July 1, 1944. Fingerprints found on the rearview mirror of a car stolen in hot summertime are hardly as persuasive as DeLoach's. In any event, I would not extend the holding in the particular facts of McLain to facts of this case. I would also submit that the handprint in this case was more incriminating than the accused's fingerprints in Corbin.
The holding of the majority that fingerprints alone cannot create sufficient evidence of a person's guilt to make a jury issue has a chilling implication. Let us suppose that an infant is kidnaped from his crib in his bedroom. The officers find fingerprints of a complete stranger to that household on the crib. That is all they have pointing to the guilt of the accused. Is the majority saying that a jury which receives no explanation whatever as to how the fingerprints got on the crib or the whereabouts of the accused at the time of the crime could not return a verdict of guilty? What logical difference is there between the two instances?
Other states have better-reasoned law on this issue than the majority's holding. In affirming a conviction based solely upon finding the accused's fingerprints at the scene of the burglary, the New Jersey Superior Court, Appellate Division, held:
We hold that a conviction may be based solely upon fingerprint evidence as long as the attendant circumstances establish that the object upon which the prints are found was generally inaccessible to the defendant and, thus, a jury could rationally find beyond a reasonable doubt such object had been touched during the commission of the crime. The mere existence of other possible hypotheses is not enough to remove the case from the jury. If a reasonable mind might fairly have a reasonable doubt or might not have one, the case is for the jury, and the decision is for the jurors to make. In making the threshold determination on a motion for a judgment of acquittal, the trial court need not be convinced of guilt beyond peradventure before the jury is permitted to consider the case. Rather, the State's evidence must be viewed in its entirety, and the prosecution given the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably can be drawn therefrom. State v. Reyes, 50 N.J. 454, 458-459, 236 A.2d 385 (1967).
New Jersey v. Watson, 224 N.J. Super. 354, 361, 540 A.2d 875, 877-878 (1988).
The Indiana Court of Appeals stated in Sansom v. Indiana, 562 N.E.2d 58, 60 (Ind. App. 1990):
Secondly, Sansom contends that merely finding a fingerprint, identified as his, at the scene of a crime is insufficient to establish that he committed the offense. In support he cites Mediate v. State, (1986), Ind., 498 N.E.2d 391. We do not disagree with this contention. We do reject Sansom's proposed application. As the Mediate court pointed out, preclusion of legitimate access to the object upon which the fingerprint was found supports the inference that the fingerprint was not left in consequence of some lawful activity.
Furthermore, a defendant's fingerprint on an object which had been moved during the commission of the offense creates a reasonable inference that the defendant left his print on the object when the crime was committed.
498 N.E.2d at 394.
Here the burglary occurred to a private apartment which had been locked when the occupant left. No one had been given permission to enter. The fingerprints [sic] identified as Sansom's was found on a glass jewelry box which had been emptied by the burglar and moved from its place on top of a videocassette recorder which had also been taken. No evidence was presented that might have accounted for the presence of the fingerprint as the result of some innocent activity.
Sansom, 562 N.E.2d at 60.
There was sufficient evidence in this case to support the verdict and I would affirm.
JAMES L. ROBERTS, Jr. and SMITH, JJ., join this opinion.
NOTES
[1] This Court has described fingerprints as "an unforgible signature." McLain, 198 Miss. 831, 24 So.2d 15 (1945).
[1] There were two counts in the August 25, 1989, indictment, the second count being for burglary of a truck. Following his conviction on the first count, the court upon motion of the State dismissed the second count.