# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01890-COA

**DEROME M. CAVITT A/K/A DEROME CAVITT**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/2013 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KEVIN DALE CAMP |
| | JARED KEITH TOMLINSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF BURGLARY OF A DWELLING AND SENTENCED AS A HABITUAL OFFENDER TO TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PROBATION OR PAROLE |
| DISPOSITION: | AFFIRMED - 03/24/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1.     Derome Cavitt was convicted, in the Rankin County Circuit Court, of burglary of a dwelling.  Cavitt was sentenced as a habitual offender to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC).  On appeal, Cavitt asserts that the trial court erred in denying his motion for a directed verdict and his post-trial motion for a

judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Zachary Johnson, Nicholas Watkins, and Joel Fahling resided in the Lakeland East Apartments in Flowood, Mississippi. On the morning of February 11, 2013, Fahling left the apartment for work at approximately 6:30 a.m., and Johnson and Watkins left the apartment for school at approximately 7:20 a.m. According to Watkins's testimony, he locked the deadbolt on the front door upon exiting the apartment. When Watkins and Johnson returned to the apartment at approximately 11:30 a.m., they found the door unlocked. Upon entering the apartment, Watkins observed that the screen from the kitchen window was on the floor of the living room and that several items, including their television, were missing from the apartment. Watkins contacted the apartment manager, Jennifer Armagost, then summoned the police.

¶3. Detective Barrick Fortune and Detective Lloyd Coulter of the Flowood Police Department's Criminal-Investigations Division were assigned to investigate the burglary. Detective Fortune determined that the intruder obtained entry to the apartment by removing the exterior window screen and forcing the lock on the window. The detectives processed the apartment for fingerprints and recovered a latent fingerprint on the metal frame of the window. The fingerprint was submitted to the Mississippi Crime Laboratory for analysis.

¶4. On February 13, 2013, Detective Fortune received the results of the fingerprint analysis, which indicated that the fingerprint belonged to Cavitt. After learning that the

fingerprint belonged to Cavitt, investigators contacted Armagost, the apartment manager, to inquire if Cavitt had any known association with the apartment complex. Armagost informed the investigators that Cavitt's sister, Demetrius Cavitt, resided in the complex. Cavitt was arrested on February 15, 2013.

¶5. Cavitt was indicted for burglary of a dwelling house on June 6, 2013. A jury trial was held on September 24-25, 2013. At trial, Johnson, Watkins, and Fahling each testified to the items taken from their apartment. The stolen items included: $300, a forty-two-inch television, a Sony PlayStation 3, several video games, an Apple iPod, and a laptop computer. Detective Fortune and Detective Coulter both testified to their roles in the investigation. Mike Hood, of the State Crime Laboratory, testified as an expert for the State. Hood testified that he was "one hundred percent positive" that the fingerprint recovered on the window sill was left by Cavitt.

¶6. At the close of the State's case-in-chief, Cavitt moved for a directed verdict, which the trial court denied. Shaneka Lowe, Cavitt's former live-in girlfriend and the mother of his children, testified for the defense. Lowe testified that Cavitt was at home with her throughout the entire morning of February 11, other than when he walked their son to preschool and when he rode with her father to pick up auto parts for her car.

¶7. Cavitt was convicted of burglary and sentenced as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Supp. 2014) to serve twenty-five years in the custody of the MDOC. On October 9, 2013, Cavitt filed a motion for a JNOV or, in the alternative, a new trial, which the trial court denied.

3

¶8.     Cavitt now appeals raising the following issues: (1) whether sufficient evidence was presented to support the verdict; and (2) whether the verdict was against the overwhelming weight of the evidence.  Finding no error, we affirm.

**DISCUSSION**

**I.      Whether there was sufficient evidence to support the verdict.**

¶9.     "A motion for a directed verdict and a motion for a JNOV both challenge the sufficiency of the evidence." *Bell v. State*, 125 So. 3d 75, 77 (¶6) (Miss. Ct. App. 2013) (citing *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)).  When considering a motion for a directed verdict and a motion for a JNOV, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Therefore, the relevant inquiry is whether any rational trier of fact could have found, beyond a reasonable doubt, that Cavitt was guilty of burglary of a dwelling.

¶10.    Mississippi Code Annotated section 97-17-23 (Rev. 2014) governs burglary of a dwelling, and provides:

> Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.

Thus, "the elements of burglary of a dwelling are: '(1) the unlawful breaking and entering of a dwelling; and (2) the intent to commit some crime when entry is attained.'" *Bell*, 125

4

So. 3d at 78 (¶7) (quoting *Kirkwood v. State*, 52 So. 3d 1184, 1187 (¶12) (Miss. 2011)).

¶11.    Cavitt argues that the trial court erred in failing to grant his motion for a directed verdict and motion for a JNOV because the "State's entire case, and thus . . . [his] conviction, rest[ed] solely upon one fingerprint discovered on the outside of a window of the residence that was burglarized," which Cavitt contends is insufficient.  In support of his argument, Cavitt relies on the Mississippi Supreme Court's decisions in *Corbin v. State*, 585 So. 2d 713 (Miss. 1991), and *Deloach v. State*, 658 So. 2d 875 (Miss. 1995).

¶12.    In *Corbin*, a police officer observed an unidentified man carrying several cartons of cigarettes in the vicinity of a grocery store that had been burglarized.  *Corbin*, 585 So. 2d at 714.  When the police officer approached the man, he dropped the cartons, fled, and was never identified.  *Id.*  It was later determined that the cigarette cartons were among items taken from the nearby grocery store.  At Walter Corbin's trial, a certified police fingerprint examiner testified that fingerprints on the cartons matched known prints of Corbin.  The Mississippi Supreme Court summarized the evidence received at trial as follows:

> (1) that M&M Grocery was burglarized sometime between closing hours September 9, 1988, and 4:50 a.m. September 10, 1988; (2) that an unidentified black male was seen dropping the items stolen from M&M Grocery and running from a police officer at 4:50 a.m. on September 10, 1988; (3) that the fingerprints of Walter Corbin were found on three of the six cartons of cigarettes recovered by the Greenville Police Department; and (4) that these cartons were generally inaccessible to the public during business hours at M&M Grocery.

*Id.* at 715.  The Mississippi Supreme Court reversed, finding that those facts, standing alone, did not prove beyond a reasonable doubt that Corbin committed the burglary.  *Id.*  The Court held that although "[t]he State [is] not [to] be required to disprove every hypothesis in a

5

criminal trial[,] [t]he State here . . . did nothing to focus the possibilities of the fingerprints being concurrent with the robbery." *Id.* Stated differently, although the cartons were connected to the burglary, the prints recovered from the cartons did not put Corbin at the store during the burglary, and there were reasonable opportunities for a person other than the burglar to have touched the items at a different time. As the Court stated, "[f]ingerprint evidence must be coupled with some other evidence, especially . . . when the fingerprint was not found at the crime scene but on some object away from the scene. The State must corroborate this physical evidence with other proof of guilt." *Id.* at 716.

¶13. Likewise in *Deloach v. State*, the only evidence connecting the defendant, Deloach, to a burglarized vending machine was Deloach's palm prints recovered from the machine. *Deloach*, 658 So. 2d at 878. Laboratory analysis indicated that one palm print taken from the vending machine matched the prints of Deloach. *Id.* at 876. The Mississippi Supreme Court found that the State failed to meet its burden and reversed Deloach's conviction, holding:

> The State failed to address the very reasonable hypothesis that Deloach placed his palm print on the vending machine during a time when he had lawful access to the machine. . . . The State relies on the inference that if Deloach ever had access to the machines then it was necessarily at the time of the burglary. . . . Thus, we conclude that the evidence offered at trial, i.e., the palm print, was legally insufficient to support the conviction of Deloach.

*Id.* at 877-78.

¶14. Thus the decisions in both *Corbin* and *Deloach* stand for the proposition that a fingerprint, as the sole proof of guilt, is insufficient to support a conviction. However, the Mississippi Supreme Court has held that "[w]hile fingerprint evidence alone . . . will not

6

suffice to support a conviction, fingerprint evidence, coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime, will." *Wooten v. State*, 513 So. 2d 1251, 1252 (Miss. 1987).

¶15.   Unlike the print impressions at issue in *Corbin* and *Deloach*, here the location of the fingerprint tends to exclude the possibility that the fingerprint was left at a time other than at the time of the burglary.  Detective Fortune testified that he determined that entry was obtained by forcing the lock on the window.  The exterior window screen was removed in order to force the lock.  The fingerprint was found on the metal frame of the window's exterior.  Also, the fact that Cavitt's sister, Demetrius Cavitt, resided in the apartment complex made Cavitt have a known association with the complex.  The evidence supports the conclusion that the fingerprint was left at the time of the burglary because the fingerprint could not have been left on the window without first removing the screen.

¶16.   Furthermore, testimony was elicited that tended to reasonably exclude the hypothesis that the fingerprint was left at a time other than that of the crime.  Armagost testified that to her knowledge, there had been no recent maintenance performed on the apartment that would require the removal of the window screen.  She further testified that Cavitt had never been employed by the apartment complex as a maintenance worker or in any other capacity. Johnson and Fahling each testified that, at the time of the burglary, they had lived in the apartment for a year and a half.  Both testified that, to their knowledge, the window screen had not been removed during that period of time.  Likewise, Watkins testified that at the time

7

of the burglary, he had resided in the apartment for the previous six months. He also testified that during that time the screen had not been removed.

¶17. We find that the evidence is ample to support the conviction. Accordingly, this issue is without merit.

**II. Whether the verdict was against the overwhelming weight of the evidence.**

¶18. Cavitt next argues that the trial court erred in denying his motion for a new trial. "A motion for a new trial challenges the weight of the evidence." *Bell*, 125 So. 3d at 78 (¶10) (quoting *Vaughn v. State*, 926 So. 2d 269, 271 (¶4) (Miss. Ct. App. 2006)). We have held that a motion for a new trial should be granted "only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice." *Wingate v. State*, 794 So. 2d 1039, 1044 (¶21) (Miss. Ct. App. 2001). When reviewing a trial court's denial of a motion for a new trial, this Court "must accept as true all evidence favorable to the State, and we may not reverse absent an abuse of discretion." *Id.*

¶19. In support of his assertion that the verdict was against the weight of the evidence, Cavitt merely restates his argument that the fingerprint evidence was not sufficient to support his conviction. As discussed above, a positive identification from a fingerprint on the window that was used to gain entry to the burglarized dwelling, and evidence tending to reasonably exclude the hypothesis that the fingerprint was left at a time other than that of the crime, are sufficient to support a conviction.

¶20. Cavitt also points to Lowe's alibi testimony and argues that he presented "credible

8

testimony showing that he was at his residence in Jackson . . . during the time that the burglary was alleged to have occurred." Lowe testified that Cavitt was at home with her on the morning that the burglary occurred.

¶21. We have held that a jury is under no obligation to believe a defendant's alibi defense. *Id.* at (¶22). Instead, "an alibi defense simply raises an issue of fact to be resolved by the jury." *Id.* Furthermore, Lowe did not conclusively present evidence of Cavitt's innocence. According to Lowe, Cavitt left the house on two separate occasions on that morning. We find that the jury acted well within its purview when it rejected Cavitt's alibi defense.

¶22. We find that the jury's verdict of guilt was not against the overwhelming weight of the evidence. Therefore, the trial court did not abuse its discretion by failing to grant Cavitt's motion for a new trial. Accordingly, this issue is without merit.

¶23. **THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PROBATION OR PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR.**