OPINION OF THE COURT
Alan D. Marrus, J.
This case presents an issue of apparent first impression in New York. In a criminal prosecution, can DNA evidence alone establish a legally sufficient case of a defendant’s guilt? While there appears to be general acceptance of the notion that DNA evidence alone can exculpate a defendant accused or *822 even convicted of a crime,[1] no reported decision in New York has determined that DNA evidence alone can inculpate a defendant sufficiently to support a guilty verdict.
Here the People commenced trial with a complainant who had been robbed and raped at knifepoint by a stranger. Several weeks after the crime, the complainant selected the defendant’s photograph from a photographic array as the person who perpetrated the crime. About two weeks later, she identified the defendant in a corporeal lineup. When the complainant testified at trial, however, she identified a spectator in the courtroom as her assailant. As a result, evidence of the previous lineup identification of the defendant had to be precluded. (See, CPL 60.25, 60.30.)
The only other evidence of identification offered by the prosecution came from an FBI special agent who is an expert in forensic DNA analysis. He performed a DNA profiling test using anal and vaginal swabs taken from the complainant at a hospital shortly after the rape and two dried blood samples, one taken from the complainant and one from the defendant. This expert testified that at least four out of the six "genetic loci” that he tested from the vaginal swabs and one from the anal swabs matched the known blood sample of the defendant. The expert’s conclusion was "that the probability of selecting another individual at random from the population that would have the same set of DNA profiles was less than 1 in 500 million for the black, the white, and the Hispanic populations.” (Trial transcript, at 203.) The only other evidence offered at trial which in any way related to identification was the testimony of an acquaintance of the defendant who saw him in the vicinity of the crime three days before the crime took place.
At the close of the People’s case, the defendant moved to dismiss the case on the ground that the evidence was legally insufficient to make out a prima facie case for the jury. The court reserved decision until after the jury deliberated and *823 reached a verdict. The jury subsequently convicted the defendant of rape in the first degree and robbery in the first degree.
The standard for a trial order of dismissal is whether the evidence offered by the prosecution is legally sufficient. (CPL 290.10.) Legally sufficient evidence means "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof.” (CPL 70.10 [1].) "Legally sufficient evidence” and "prima facie case” are often used interchangeably, but neither standard is as rigorous as "proof beyond a reasonable doubt.” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 70.10, at 177.)
The evidence of defendant’s guilt was entirely circumstantial: (1) the complainant was robbed and raped; (2) swabs taken from her vagina and anus shortly after the rape contained semen; (3) the semen samples matched the DNA profile of the defendant sufficiently to estimate that the odds were 1 in 500 million that another person was the source of that DNA; (4) the complainant testified that before the rape she had not engaged in sexual intercourse for at least four or five years; and (5) the defendant was seen in the area where the rape took place three days before the crime.
Circumstantial evidence is legally sufficient when "the hypothesis of guilt * * * flow[s] naturally from the facts proved, and [is] consistent with them and * * * exclude[s] 'to a moral certainty’ every reasonable hypothesis of innocence.” (People v Benzinger; 36 NY2d 29, 32.)
To determine whether the evidence here meets that standard, this court has reviewed cases where fingerprint evidence was deemed sufficient to establish the identity of the perpetrator. (See, People v Murray, 168 AD2d 573 [2d Dept 1990]; People v Talley, 110 AD2d 792, 793 [2d Dept 1985].) But a fingerprint expert will testify that the fingerprints left at the scene "match” those of the defendant. (People v Murray, supra.) The DNA expert here was clear, however, to distinguish his finding from a fingerprint match:
"Q. Agent, recently in the news there’s been a lot of the use of the term DNA fingerprinting suggesting the possibility of absolute identification. Can the DNA comparisons you described result in such an absolute identification?
"A. No, they cannot. The DNA tests that I do and I’ve described to you do not result in an absolute identification, as a fingerprint comparison results in an absolute identification.” (Trial transcript, at 186.)
*824 This court has also reviewed, the appellate case law on identification by bite mark evidence. But in the one reported New York case on the subject, the expert testimony of a forensic odontologist that a bite mark on the defendant’s arm was consistent with the victim’s "dentition” was not conclusive on identity and was offered to corroborate the victim’s in-court identification of the defendant. (People v Bethune, 105 AD2d 262 [2d Dept 1984].)
DNA profiling evidence, however, is a relative newcomer to New York trials. Indeed, it was only a little more than a year ago that our highest State Court determined that DNA evidence is admissible. (People v Wesley, 83 NY2d 417 [1994].) But in declaring that DNA evidence should be admissible, the New York Court of Appeals observed that "[s]uch evidence, consisting of unique genetic characteristics belonging to an individual, can provide strong evidence of a person’s presence at and participation in a criminal act.” (People v Wesley, at 421, supra [emphasis added].) Yet it appears that neither that Court, the Appellate Division, nor any of the State trial courts have issued a reported decision sustaining a criminal conviction on DNA evidence alone.
For guidance on this issue, therefore, decisions from other jurisdictions have been consulted. There appear to be two reported decisions in the United States, both of which have upheld criminal convictions where the sole evidence linking the defendant to the crime is DNA evidence. In Springfield v State (860 P2d 435 [Wyo 1993]), the Wyoming Supreme Court upheld a rape conviction based entirely on DNA evidence developed, as here, by the FBI laboratory. The victim, while able to give a general description of her assailant, was unable to make an identification, although she did testify that the defendant "resembles him”. The DNA expert found a match between the defendant’s blood sample and samples recovered from a stain on the victim’s panties and from her anus. The probability that another Indian person would have the same DNA was estimated to be at 1 in 250,000. The Wyoming Supreme Court concluded that "the evidence was sufficient for 'reasonable and rational individuals’ to conclude that the [defendant] was the perpetrator.” (860 P2d, at 449, supra.)
In California, the Court of Appeals, 4th District, Division 3, in People v Soto (34 Cal App 4th 1588, 35 Cal Rptr 2d 846 [1994]) has also upheld a defendant’s conviction for rape where the identifying evidence of the defendant came solely from DNA. There, the victim was unable to identify her *825 assailant because he wore a mask during the attack. But a DNA match between a seminal stain on the victim’s bedspread and the defendant’s blood resulted in the statistical probability of 1 in 189 million that another Hispanic could have provided that sample. The court determined that "corroboration of identifying evidence was not required for DNA comparison.” (34 Cal App 4th 1588, 35 Cal Rptr 2d, at 859, supra.)
The holdings in these cases are consistent with the recognition and approval lawyers and Judges have recently bestowed on DNA evidence. In less than a decade, DNA evidence "has been used in thousands of homicide, rape and paternity cases —often with little challenge from defense attorneys.” (New York Times, May 9, 1995, at 22, col 1.) The technology is regarded as theoretically foolproof. (Id.)
Identification evidence from an eyewitness inculpating a defendant, which can be unreliable and the product of suggestiveness, would not be relied upon by a court in the face of contradictory DNA evidence (see, n 1, supra). Why then should not the opposite be true — that DNA evidence should be relied upon, even in the face of contradictory eyewitness identification evidence exculpating a defendant? Indeed, that is exactly what the jury has done here in finding the defendant guilty.
The DNA evidence at the trial was the product of careful evaluation by a recognized expert in a prominent laboratory using a scientific technique to determine a statistical probability. The eyewitness identification evidence came from an injured and traumatized rape victim using impaired vision while in the unfamiliar capacity of a witness in a strange courtroom setting.
DNA evidence is not completely infallible — no evidence is. Although it has been proclaimed as "virtually infallible”[2] and "a breakthrough that 'could revolutionize law enforcement’ ”,[3] this court is well aware that there may be "a significant margin of error in scientific analysis.”[4] Critics of forensic science are able to cite examples of sloppy laboratory perfor *826 manee to support their claim that there is room for "drastic improvement.”[5]
There can be little doubt, however, that the perils of eyewitness identification testimony far exceed those presented by DNA expert testimony. Acquittals in criminal prosecutions based entirely on eyewitness identification evidence are legion, as are reversals and vacaturs of convictions premised entirely on such evidence. New York State courts have even given serious consideration to admitting expert testimony to discredit eyewitness identification evidence. (See, People v Mooney, 76 NY2d 827 [1990]; see also, People v Green, 151 Misc 2d 194 [Sup Ct, NY County 1991].) Where the prosecution is confronted with an irreconcilable conflict between eyewitness identification evidence and DNA identification evidence, it is likely to rely on the DNA evidence. (See, People v Dabbs, 154 Misc 2d 671 [Sup Ct, Westchester County 1991].)
This court is, therefore, satisfied that the testimony of even one DNA expert that there is a genetic match between the semen recovered from the victim of a rape and the blood of the defendant, a total stranger, and the statistical probability that anyone else was the source of that semen are 1 in 500 million is legally sufficient to support a guilty verdict. The defendant’s motion for a trial order of dismissal is, therefore, denied.

. According to information supplied by the Innocence Project at Cardozo Law School, seven defendants convicted and imprisoned for criminal activity were exonerated and freed from custody based on DNA evidence developed after their convictions. Marion Coakley (Suffolk County, N. Y.); Kerry Kotler (Suffolk County, N. Y.); Brian Piczcek (Ohio); Terry Chalmers (Westchester County, N. Y.); Kurt Bloodsworth (Maryland); Charles Dabbs (Westchester County, N. Y.); and Glendall Woodall (West Virginia). Two other defendants were granted clemency based on DNA evidence. Edward Honaker (Virginia) and Tony Snyder (Virginia).

. Gordon, DNA Identification Tests — On the Way Toward Judicial Acceptance, 6 Journal Suffolk Acad Law 1 (1989).

. Purcell, Criminal Procedure — Match-Game 1990’s: The Admissability of DNA Profiling, 13 Campbell L Rev 209 (1991), quoting Moss, DNA — The New Fingerprints, ABAJ, May 1,1988, at 66.

. Imwinkelried, The Debate in the DNA Cases Over the Foundation for the Admission of Scientific Evidence: The Importance of Human Error as a Cause of Forensic Misanalysis, 69 Wash U L Q 19, 22 (1991).

. Jonakait, Forensic Science: The Need for Regulation, 4 Harv J L & Tech 109, 115 (spring 1991).