**STATE of Missouri, Respondent,**

v.

**Dawud ABDELMALIK, Appellant.**

No. WD 67828.

Missouri Court of Appeals, Western District.

Oct. 31, 2008.

Laura G. Martin, Kansas City, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before DIV III: ELLIS, P.J., HARDWICK and DANDURAND, JJ.

LISA WHITE HARDWICK, Judge.

Dawud Abdelmalik appeals from his jury conviction for capital murder. He contends: (1) the DNA evidence is insufficient to support his conviction; and (2) the circuit court plainly erred in allowing a second trial after the first trial resulted in a mistrial. For reasons explained herein, we affirm the judgment of conviction.

## FACTUAL AND PROCEDURAL HISTORY

On November 12, 1980, twenty-two year old D.F. was discovered dead in her apartment after not being heard from for several days. Her body was positioned face down on the floor, her hands were tied behind her back with knotted clothing, and her feet were secured together with rope. Another piece of rope was tied around her neck. She was nude from the waist down. A broom was found between her legs with the handle pointing toward the victim. The top three inches of the broom handle were covered in human feces.

Police officer Wayne Owings took scrapings from under D.F.'s fingernails while the body was still on the floor of the apartment. One of her fingernails was found under her chest and another was found across the room. D.F. was missing a tooth, which was found under her head.

The body showed signs of some decomposition, indicating that death had occurred at least a few days prior to discovery of the body. An autopsy revealed abrasions and bruising on D.F.'s neck, an abrasion on her right arm, a laceration under her chin, and blood in the her mouth. The cause of death was determined to be ligature strangulation and asphyxiation.

In 2003, DNA testing of the materials found under D.F.'s fingernails matched the genetic profile of Dawud Abdelmalik. After Abdelmalik agreed to submit to further testing, authorities verified the match between him and the material from D.F.'s left-hand fingernails. Investigators further determined that, in November 1980, Abdelmalik worked at a location within one mile of D.F.'s apartment and lived less than two miles away.

Abdelmalik was charged with capital murder, a violation of § 565.001, RSMo 1978.[1] During deliberations in his first trial, the circuit sent all exhibits to the jury room at the jury's request. Later, the jury foreperson sent the court a note stating "We have state's exhibit 61 … Is this exhibit admitted into evidence?" That exhibit had not been admitted into evidence. Defense counsel moved for a mistrial, which the trial court granted.

The case proceeded to a second trial in March 2006. The jury found Abdelmalik guilty of capital murder, and the court sentenced him to life imprisonment without probation or parole for a minimum of fifty years. This appeal follows.

## SUFFICIENCY OF THE EVIDENCE

In his first point on appeal, Abdelmalik asserts the circuit court erred in overruling his motion for judgment of acquittal because the DNA evidence was insufficient to support his conviction on the capital murder charge. "Our review of this point is limited to determining whether the jury had substantial evidence from which to find the defendant guilty beyond a reasonable doubt." *State v. Stallings,* 158 S.W.3d 310, 313 (Mo.App.2005). In making this determination, we accept as true all the evidence and inferences favorable to the State and disregard all contrary evidence and inferences. *Id.* Circumstantial evidence is given the same weight as direct evidence in considering the sufficiency of the evidence. *State v. Grim,* 854 S.W.2d 403, 405–06 (Mo.banc 1993).

Under Missouri law, "[a]ny person who unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes

1. All statutory citations are to the Revised Missouri Statutes 1978 unless otherwise indicated.

the killing of another human being is guilty of the offense of capital murder." § 565.001. The State must prove the elements of the offense beyond a reasonable doubt. *State v. Dowdy*, 60 S.W.3d 639, 641–42 (Mo.App.2001). Abdelmalik contends the State failed to produce sufficient evidence to prove his identity as the person who killed D.F.

The evidence adduced at trial showed that D.F. struggled with her attacker inside the apartment. She had abrasions and lacerations around her neck, a tooth was knocked out, and a fingernail had been torn off. Locks of her hair were pulled out and found throughout the apartment. Her hands and feet were bound.

The evidence further showed that in 1980, Abdelmalik worked at locations near the victim's apartment and had friends that lived on her street. During questioning, he admitted that D.F.'s apartment building looked familiar. He initially acknowledged that D.F. looked familiar to him but later stated that he had no memory of her name or face.

Abdelmalik was linked to the murder through DNA evidence. The evidence established that a "significant" amount of Abdelmalik's DNA was found under the fingernails of the victim's left hand, which is also the hand missing a fingernail from the apparent struggle. The DNA was initially matched to Abdelmalik's DNA in the state DNA database. The match was then verified when Abdelmalik provided the police with a buccal swab.

The material discovered under the victim's left hand fingernails was visible to the naked eye and contained human tissue and blood. The DNA testing returned a genetic profile that would occur only once in one quintillion individuals. The amount of material collected from the victim's left hand fingernails was more than one hundred times more than is necessary to de-

velop a full genetic profile. Additionally, testimony offered at trial stated that such an amount was consistent with scratching and inconsistent with casual contact.

Although a full genetic profile could not be produced from the material gathered from the victim's right hand fingernails or the material used to bind the victim's hands, the partial profiles generated from these samples did not eliminate Abdelmalik as a possible source of the material. It is permissible for a jury to give significant weight to DNA evidence, even when that evidence fails to provide a "positive identification." *State v. Rockett*, 87 S.W.3d 398, 405 (Mo.App.2002).

Abdelmalik points to *State v. Luna*, 800 S.W.2d 16 (Mo.App.1990), in support of his position that the State failed to prove his identity. In *Luna*, the State presented the following evidence to support a second-degree murder charge against the defendant: (1) the defendant had an argument with the victim on the morning of the murder; (2) the defendant asked to use a neighbor's phone around the time the victim died; (3) the defendant shivered and spoke rapidly while asking to use the phone; (4) the defendant offered new shoelaces to a third party two weeks before the murder, and the victim was found with a shoelace around his neck; (5) the defendant's jeans bore two drops of blood which matched the blood type of the victim and a third party; (6) the defendant's legs and arms bore scrapes and bruises; and (7) the defendant's belt buckle could have caused abrasions found on the victim. *Id.* at 19.

The *Luna* court found that the evidence was insufficient to support a finding that the defendant in that case was the murderer. *Id.* at 21. The court reached this decision by relying on the now discredited circumstantial evidence rule, which was ex-

pressly rejected by the Missouri Supreme Court in *State v. Grim*, 854 S.W.2d 403, 407–08 (Mo.banc 1993). *Id.* at 19. In so finding, the court did note that "[t]he blood on the defendant's jeans matching the victim's *blood type* provides the only substantial circumstantial link between the defendant and the victim's death." *Luna*, 800 S.W.2d at 20 (emphasis added). However, the court further stated that even this link was too tenuous to support the conviction. *Id.*

Even considering the inapplicable standard used in *Luna*, the DNA evidence provides a much more tangible link between Abdelmalik and the murder of D.F. In *Luna*, a spot of blood matching the victim's blood type was found on a pair of jeans worn by the defendant. *Id.* at 19. Although the blood was of a "relatively rare blood type," it matched about seven people per thousand in the population and one other individual involved in the events of that case. *Id.* at 18, 20. That link is less reliable than the DNA evidence presented in the instant case. Here, scrapings from the victim's fingernails, in an amount inconsistent with casual contact, matched Abdelmalik in a profile that would occur only once in one quintillion individuals. These connections, both in terms of where the physical evidence was collected (work jeans versus under fingernails) and the specificity of identification afforded by the analyses, each provide more substantial circumstantial evidence of Abdelmalik's involvement in the murder than was shown in *Luna*.

Abdelmalik also relies on *State v. Freeman*, No. 28150, 2008 WL 142299 (Mo. App.2008), in arguing that DNA evidence alone does not provide substantial evidence on identity. We first note that the Supreme Court of Missouri has accepted transfer of the *Freeman* case, thereby va-

cating the court of appeals decision. But regardless of any future disposition, the vacated opinion does not support Abdelmalik's claim in this appeal.

In *Freeman*, the appeals court found that DNA evidence linking the defendant to pantyhose used to restrain the victim and to a used tissue found near the victim's body, along with possession of a bottle that could possibly have caused some of the injuries to the victim and presence within at least seven blocks of the crime scene, was insufficient to allow a reasonable juror to find that the defendant caused the death of the victim. *Id.* at *16. In so finding, the court emphasized the possibility of transference of DNA evidence between people and objects, as well as objects and objects. *Id.* at *12–13. The court noted that the victim and defendant were both present at a bar for several hours on the night of the murder and were in close proximity to each other on at least two occasions. *Id.* at *13. The court reasoned that this time period allowed for the potential transfer of DNA evidence either from direct contact between the victim and defendant or from either party touching an object or surface, which was later touched by the other. *Id.* The court also noted that the source of the DNA was indeterminate, so that the possible sources could have been skin cells, blood, mucus, or another body fluid. *Id.* at *13–14.

The evidence here is distinguished from that offered in *Freeman*. The substantial amount of DNA evidence recovered from under D.F.'s fingernails was inconsistent with casual contact. This fact is important for two reasons. First, the placement of the DNA material shows that there was direct physical contact between Abdelmalik and the victim. The potential that the DNA was a result of an attenuated trans-

ference is unfathomable under these facts.[2] Second, because the amount was inconsistent with casual contact, an inference of defensive scratching is proper. Additionally, unlike *Freeman*, the material giving rise to the DNA profile here was identifiable as skin and blood, which is consistent with the scratching theory. Because the location of the DNA material in this case was more likely the result of physical contact between the Abdelmalik and D.F., and the nature of the material and its concentration was consistent with a defensive struggle, this case is not controlled by the outcome in *Freeman*.

Finally, Abdelmalik raises several alternative possible interpretations or inferences that do not support a finding of guilt. He argues that because there is a possibility that some of the DNA evidence from D.F.'s left and right hands may have been mixed and the prosecution's case depended in part on the quantity of DNA evidence found under the left hand fingernails, the evidence was insufficient to support a conviction. These arguments are unpersuasive under our standard of review. In making a determination of whether the jury was presented with substantial evidence from which to find the defendant guilty beyond a reasonable doubt, we accept as true all the evidence and inferences favorable to the State and

disregard all contrary evidence and inferences. *State v. Stallings*, 158 S.W.3d 310, 313 (Mo.App.2005). Nothing in the record supports Abdelmalik's contention that the technician employed improper techniques in taking the fingernail scrapings. However, even if an inference supporting a finding that the scrapings were deficient in some way could be made, we must disregard all inferences contrary to the verdict.

The issue of whether DNA evidence alone can provide sufficient evidence of identity to support a conviction is one of first impression in Missouri. We conclude that where, as here, DNA material is found in a location, quantity, and type inconsistent with casual contact and there is a one in one quintillion likelihood that someone else was the source of the material, the evidence is legally sufficient to support a guilty verdict. Our decision is consistent with other state and federal jurisdictions, which have uniformly held that DNA evidence, alone, can provide sufficient evidence to support a criminal conviction.[3] Point I is denied.

## DOUBLE JEOPARDY

■ In his second point on appeal, Abdelmalik asserts the circuit court plainly erred by allowing the second trial to proceed against him in violation of the double

---

**2.** The evidence showed that the 416 nanograms of DNA recovered from the victim's left hand fingernails was more than eight times more than can be transferred by a person's casual contact with an object.

**3.** See, e.g., *People v. Rush*, 165 Misc.2d 821, 630 N.Y.S.2d 631, 634 (N.Y.Sup.1995) ("the testimony of even one DNA expert that there is a genetic match between the semen recovered from the victim of a rape and the blood of the defendant, a total stranger, and the statistical probability that anyone else was the source of that semen are 1 in 500 million is legally sufficient to support a guilty verdict"); *United States v. Wright*, 215 F.3d 1020, 1028

(9th Cir.2000) ("[t]he DNA evidence alone overwhelmingly establishes that Wright was one of the individuals who robbed the Wells Fargo Bank"); *Roberson v. State*, 16 S.W.3d 156, 170 (Tex.App.2000) ("the testimony of even one DNA expert that there is a genetic match between the semen recovered from the victim of a rape and the blood of the defendant ... is legally sufficient to support a guilty verdict"); *State v. Toomes*, 191 S.W.3d 122, 131 (Tenn.Crim.App.2005) (finding DNA evidence alone "sufficient to support the defendant's conviction" after noting the probabilities of finding a matching profile to range from one in five billion to one in 185 billion).

jeopardy protections in the Fifth and Fourteenth Amendments to the United States Constitution.

Under Rule 30.20, we have discretion to review for " 'plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.' " *State v. White,* 222 S.W.3d 297, 300 (Mo.App.2007). "The review involves two steps. 'First, we must decide whether the claim facially establishes an error that is evident, obvious, clear and affected substantial rights.' " *Id.* (quoting *State v. Angle,* 146 S.W.3d 4, 13 (Mo.App.2004)). If this criterion is met, we apply the second step and consider whether leaving the error uncorrected will result in manifest injustice. *Id.*

 Generally, the Double Jeopardy Clause does not bar retrial of a criminal defendant when the defendant successfully moves for a mistrial. *State v. Barton,* 240 S.W.3d 693, 701 (Mo.banc 2007). However, an exception to this rule would bar retrial when the defendant seeks a mistrial due to prosecutorial misconduct that is intended to goad the defendant into moving for a mistrial and undermine the protections afforded by the Double Jeopardy Clause. *Id.* "The burden is on the defendant to prove that this request [for a mistrial] was the result of erroneous prosecutorial conduct calculated to coerce the defendant into requesting a mistrial." *State v. Fleer,* 851 S.W.2d 582, 598 (Mo. App.1993).

Here, Abdelmalik requested the mistrial after the jury erroneously received State's exhibit 61 during their deliberations. He argues that the prosecutor's failure to "keep track of its own exhibits" was misconduct that resulted in State's exhibit 61 being sent to the jury. However, we find nothing in the record to indicate any bad faith or intent to undermine the defendant's rights against double jeopardy.

Even if the evidence showed that the prosecutor was careless in handling the exhibits, Abdelmalik fails to cite any authority that poor record-keeping constitutes purposeful misconduct. The court properly ordered a retrial because there was no evidence to suggest the prosecutor intentionally sent exhibit 61 to the jury room. Point II is denied.

### CONCLUSION

The judgment of conviction is affirmed.

All Concur.