KITCHENS, Justice,
dissenting:
¶ 11. In Mississippi criminal prosecutions based entirely on circumstantial evidence, the State carries the significant burden to prove the defendant’s guilt beyond a reasonable doubt and to the exclusion of all reasonable hypotheses consistent with innocence. Lynch v. State, 877 So.2d 1254, 1268 (¶ 84) (Miss.2004); Montgomery v. State, 515 So.2d 845, 848 (Miss. 1987). In such cases, “[t]o justify conviction, there must remain no reasonable hypothesis save that of guilt.” Baker v. State, 817 So.2d 901, 902 (Miss.1975). Therefore, when the State’s evidence is entirely circumstantial, it is. the burden of the State to eliminate every reasonable hypothesis consistent with innocence; it is not the burden of the defendant to argue whether a certain reasonable hypothesis occurred or not. The majority improperly shifts the burden of proof to the defendant in a circumstantial evidence case, and for that reason, I must respectfully dissent.
¶ 12. The sole physical evidence against Cotton was the presence of DNA on a very small amount of scrapings taken from the fingernails of Burks’s right hand. As noted by the majority, other jurisdictions have affirmed convictions based solely on DNA evidence. However, every one of the cited cases is markedly different from the one before us. In State v. Toomes, 191 S.W.3d 122 (Tenn.Crim.App.2005), the defendant’s DNA material was found in the vaginal and anal swabs of a rape victim, in a place that indisputably is inconsistent with casual contact and exclusionary of a reasonable hypothesis consistent with innocence. Again, in Roberson v. State, 16 S.W.3d 156 (Tex.Ct.App.2000), the defendant’s DNA was obtained from a rape-kit examination of the victim’s vagina. The defendant in Rush v. Artuz, 2009 WL 982418 (E.D.N.Y. April 10, 2009), was convicted of rape after his genetic material was found in a rape kit. A DNA profile obtained from a vaginal smear containing semen was used to convict the defendant in State v. Hunter, 169 Ohio App.3d 65, 861 N.E.2d 898 (2006). Clearly, if Cotton’s DNA had been obtained from a rape kit, or found in or near Burks’s vagina in the form of semen or blood, the evidence combined with its location would be sufficient to convict. But his DNA was found in a few sparse scrapings obtained from underneath the fingernails of one of Burks’s hands, and it was shown that the two had *144 been in close physical proximity only hours before Burks’s murder.
¶ 13. The only case cited by the majority that comes close to the facts before this Court is State v. Abdelmalik, 273 S.W.3d 61 (Mo.Ct.App.2008). The defendant in that case was convicted of capital murder based upon his DNA material’s having been found underneath the fingernails of the victim. Id. at 64. However, in that case, “a ‘significant’ amount of Abdelma-lik’s DNA was found under the fingernails of the victim’s left hand, which [was] also the hand missing a fingernail from the apparent struggle.” Id.
The material discovered under the victim’s left hand fingernails was visible to the naked eye and contained human tissue and blood. The DNA testing returned a genetic profile that would occur only once in one quintillion individuals. The amount of material collected from the victim’s left hand fingernails was more than one hundred times more than is necessary to develop a full genetic profile.
Id. (emphasis added). In this case the amount of testable genetic material was so minute that it was consumed after the first, DNA test. Dr. Hayne testified that he did not see “any foreign material underneath the fingernails” when he scraped them. There was no sign of an intense physical struggle such as in Abdelmalik, where the attacker’s blood and flesh were scratched off by the victim during the attack. In fact, none of the cases from foreign jurisdictions cited by the majority is comparable to the case before us, in that, in all of those cases, the location of the defendant’s DNA was, without question, inconsistent with casual contact, and, particularly in the rape cases, inconsistent with any reasonable hypothesis consistent with innocence.
¶ 14. Here, as stated in the indictment, the State had the burden of proving that Joe Cotton “did unlawfully, willfully and feloniously, without authority of law, and with deliberate design to effect death, kill Fannie Lee Burks.... ” In support of its case, the State adduced evidence showing that a very small amount of Cotton’s DNA was found underneath the fingernails of Burks’s right hand and that Burks’s gunshot wounds were “contact” wounds, meaning her killer placed the barrel of the gun on or close to her skin before shooting her. The State elicited testimony indicating that Cotton knew Burks and even had been in her apartment on two prior occasions. It adduced evidence showing that Cotton had been in close physical proximity with Burks the day she was murdered, and that the two may have touched each other. The' State’s DNA expert testified that casual contact can lead to DNA under human fingernails, particularly if the person to whom the DNA belongs is sweating or bleeding when the contact between the nail and the skin occurs. No evidence was adduced to show that Cotton was at or near Burks’s apartment at the time of her death; no murder weapon was found; and none of Burks’s valuables was recovered or observed in Cotton’s possession.
¶ 15. Two reasonable hypotheses explaining how Cotton’s genetic material got under the fingernails of Burks’s right hand can be gleaned from the evidence adduced at trial. Either Burks scratched Cotton as he attacked her and killed her from close range, or she scratched or touched him with her fingernail as she handed him his food at the restaurant where she worked a few hours before she was killed. The majority’s reliance on Cotton’s statement to police that Burks did not scratch him when she handed him his food is unpersuasive. Cotton was asked whether he remembered whether someone from whom he had purchased food had scratched him during an exchange that had occurred *145 more than thirteen years before. The majority’s expectations regarding the power and accuracy of longterm human memory far exceed my own. Because both of the hypotheses were reasonable, based upon the evidence, the State did not meet its burden of proof as a matter of law.
¶ 16. This Court has reversed convictions predicated on circumstantial evidence where the evidence proved only that the defendant had been near the object of the crime at some point. In Deloach v. State, 658 So.2d 875, 877 (Miss.1995), this Court overturned a conviction for burglary because the only evidence linking the defendant to the crime was his palm print on the side of a vending machine located at the vocational complex where the burglary had occurred. The Court found that “[t]he State failed to address the very reasonable hypothesis that Deloach placed his palm print on the vending machine during a time when he had lawful access to the machine[,]” despite the fact that Deloach was not a student at the school and did not seem to have a reasonable explanation for ever having touched the vending machine. Id. Ultimately, the State did not meet its burden because it “relie[d] on the inference that if Deloach ever had access to the machines then it was necessarily at the time of the burglary” without addressing the other reasonable inference of innocence that the palm print’s presence on the vending machine created. Id. at 877-78.[10]
¶ 17. I see no evidentiary difference between the palm print found on the vending machine in Deloach and the DNA found underneath Burks’s fingernails in the present case. In Deloach, the State failed to show a motive for the crime, or to show any evidence that Deloach had touched the vending machine during the commission of a burglary. Similarly, in this case, the State adduced no evidence of a murder weapon, no evidence of Cotton’s having been near the victim’s apartment around the time of the murder, and no evidence to show that his DNA had been deposited under Burks’s fingernails during the murder. In Deloach and in the case before us, both an inculpatory and exculpatory explanation reasonably can be inferred from the circumstantial evidence. Accordingly, the State did not carry its burden of proof as a matter of law.
¶ 18. The State bears the burden of excluding any reasonable hypothesis consistent with innocence beyond a reasonable doubt. If the State has not been able to exclude any and all reasonable hypotheses consistent with innocence, then it has failed in its burden of proof. “To justify conviction, there must remain no reasonable hypothesis save that of guilt.” Baker, 317 So.2d at 902. “[Wjhere the evidence tends equally to sustain two inconsistent propositions, neither can be said to have been established by legitimate proof and certainly not through the guise of circumstantial evidence.” In re B.J.S., 174 Ga. App. 515, 516, 330 S.E.2d 186, 188 (Ga.Ct. App.1985). “If ... the evidence of guilt or innocence remains anywhere near .equipoise — that is, the facts are equally susceptible to two or more constructions— *146 then reasonable doubt exists as a matter of law.” Haskins v. Commonwealth, 44 Va. App. 1, 9, 602 S.E.2d 402, 406 (Va.Ct.App. 2004) (quotation omitted).
¶ 19. The majority states that the testimony provided in this case “does not support an inference of even casual contact.” With respect, I completely disagree. Cotton purchased food from Burks and she passed him a bag of food. One can imagine many ways in which casual and relatively unnoticeable contact, resulting in passage of DNA from Cotton to Burks, could have occurred while he was in the café with her. For example, Cotton could have sneezed on Burks, or inadvertently sprayed saliva onto her during the course of routine conversation. Burks’s wiping her face in the aftermath of such an innocuous occurrence could have resulted in the deposit of Cotton’s DNA under her fingernail. But it is not for this Court, or for Cotton, to develop a list of lawful scenarios in which Cotton’s DNA might have made its way to Burks’s fingernails. Rather, it is sufficient that the State’s expert testified that the DNA’s presence underneath the nail could have been the result of casual contact between the two. This provides an adequate evidentiary basis for a reasonable hypothesis that is consistent with Cotton’s innocence and requires his acquittal.
¶ 20. The State did not eliminate the possibility of transfer by casual, innocent contact, and the majority incorrectly holds that it is Cotton’s burden to adduce evidence to show that, in his encounter with Burks more than thirteen years prior, she shook his hand or rubbed his head or patted his back, or did anything else to touch him. It is not Cotton’s burden to prove that such casual touching occurred; it is the State’s burden to prove that it did not. This was the rationale relied upon by the Court in Deloach, where the defendant was under no obligation to argue an innocent explanation of the presence of his palm print on the vending machine at the site of the burglary. Instead, the Court correctly held that the State had failed to eliminate all reasonable innocent explanations for the presence of the palm print.
¶ 21. So should we do here. At the end of the day, the circumstantial evidence was capable of two reasonable interpretations: Cotton’s DNA got under some of Burks’s fingernails when he killed her, or through some casual contact with her. Both inferences are reasonable and supported by the evidence, and it is the State’s burden to eliminate all reasonable hypotheses consistent with innocence. It has not done so. The majority finds that the DNA material was “found in a location inconsistent with casual contact and absent a ‘reasonable hypothesis consistent with innocence.’ ” I find that, based upon the evidence adduced at trial, the DNA material was found in a location consistent "with casual contact and that there was a reasonable hypothesis consistent with innocence. Because Cotton’s conviction should be reversed, I respectfully dissent.
DICKINSON, P.J., CHANDLER AND KING, JJ„ JOIN THIS OPINION.

. The Court relied on two prior cases, Cor-bin v. State, 585 So.2d 713 (Miss.1991), and McLain v. State, 198 Miss. 831, 24 So.2d 15 (1945), in holding that the circumstantial evidence was insufficient to support a conviction. The Court in Corbin reversed a burglary conviction because the defendant’s fingerprints were found on a few of the items that were stolen, and those facts, standing alone, did not prove beyond a reasonable doubt that the defendant was the one who committed the burglary. Corbin, 585 So.2d at 715-16. In McLain, the Court reversed and rendered a conviction for larceny of an automobile when the sole evidence against the defendant consisted of his fingerprint on the rear-view mirror of the car. McLain, 24 So.2d at 16.