**STATE of Missouri, Respondent,**

**v.**

**Justin R. SIMON, Appellant.**

**WD 79446**

Missouri Court of Appeals, Western District.

Opinion filed: June 27, 2017

CORRECTED June 28, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied August 1, 2017

Karen L. Kramer, Jefferson City, for Respondent.

Craig A. Johnston, Columbia, for Appellant.

Before Division One: Gary D. Witt, Presiding Judge, Alok Ahuja, Judge and Edward R. Ardini, Jr., Judge

## EDWARD R. ARDINI, JR., JUDGE

Justin R. Simon was charged as a prior and persistent offender in the Circuit Court of Jackson County with two counts of forcible rape, three counts of forcible sodomy, and one count of second-degree robbery. He was found guilty of all six counts and sentenced to a total of twenty-five years' imprisonment. Simon alleges

two points on appeal. In his first point, Simon argues that the trial court violated his constitutional right against double jeopardy by allowing his retrial after his first trial ended in a mistrial. Simon's second point alleges that the trial court committed plain error by permitting the submission of two counts to the jury that he asserts had been dismissed by the State. Finding no error, we affirm the judgment of the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Simon's first trial began on November 2, 2015. During this trial, the State played for the jury a DVD recording of his interview with police that was to have been edited to remove reference to certain information encompassed within a pretrial ruling on a motion *in limine.* Because references to prior bad acts committed by Simon that were to be excluded pursuant to the motion *in limine* remained in the version played for the jury, Simon objected and moved for a mistrial. A mistrial was declared.

Simon subsequently filed a motion to dismiss with prejudice, arguing that the mistrial was the result of prosecutorial conduct intended to provoke or goad Simon into requesting a mistrial and that his retrial was therefore barred by the Double Jeopardy Clause of the United States Constitution. The motion was denied.

The case again went to trial before a jury beginning on December 15, 2015. The evidence established that Simon and another individual raped and robbed the female victim after meeting her on the street and offering to help her return to St. Joseph. After walking to an apartment building, Simon and the other individual convinced the victim to wait inside the doorway of the complex while they retrieved their car keys. Once inside, both men forced the victim into an upstairs apartment, locked the door, and ripped off her clothes. They played a pornographic video and told her to perform the acts depicted in the video, hitting her and threatening to kill her if she did not comply. Each man penetrated the victim's vagina, mouth, and anus with their penis, and Simon also put his mouth on the victim's vagina.[1]

After completing these acts, the men forced the victim to bathe. During this time, Simon went to the living room where the victim's purse was located. The victim was later allowed to dress and was given her purse. She was missing her cash, credit card, iPad, and phone, all items that had been in her purse when she entered the apartment. She requested her phone so that she could get to her car, and the other man returned it to her. The victim and the two men left the apartment and walked for two or three blocks before they left the victim, threatening to kill her if she told anyone.

The victim walked another block or two and then called 911. She told the responding officer that she had been raped by two unknown men in a nearby apartment. She was taken to the hospital, where a sexual assault exam was completed by a forensic nurse. A detective determined that the apartment belonged to Simon. The victim

---

1. The first count of forcible rape was based on Simon's penetration of the victim's vagina (Count I). The second count of forcible rape was based on Simon being an accomplice to the other perpetrator's penetration of the victim's vagina (Count III). The first count of forcible sodomy was based on Simon placing his penis in the victim's mouth (Count II). The second count of forcible sodomy was based on Simon being an accomplice to the other perpetrator placing his penis in the victim's mouth (Count IV). The last count of forcible sodomy was based on Simon placing his mouth on the victim's vagina (Count V).

identified Simon as one of the rapists both in a photo array and in court. Additionally, a vaginal swab from the victim was positive for semen and matched Simon's DNA.

During the instructions conference, the judge announced her view that the MAI forms required the name of the other perpetrator to be included in the verdict directors for the two counts against Simon alleging accomplice liability. Because the prosecutor was concerned that the State had not met its burden if the name of the other individual was required to be included, he considered dismissing the two accomplice-based charges. After a discussion about how dismissing those charges would affect the numbering and referencing of the remaining charges in the verdict directors, the State concluded it would not dismiss the two counts and all six counts were submitted to the jury without objection. Simon was convicted of all counts and sentenced to a total of twenty-five years' imprisonment.

Additional facts are set forth throughout this opinion as necessary.

## II. DISCUSSION

### A. Mistrial

Simon's first point on appeal alleges that the trial court erred in overruling his motion to dismiss and allowing the case to be retried after a mistrial ended the first trial. The mistrial was declared because the State failed to properly edit Simon's recorded statement consistent with a pretrial motion *in limine* ruling. Simon argues that his retrial was barred by the Double Jeopardy Clause of the United States Constitution because the State's failure to accurately edit the recording was for the purpose of provoking Simon into moving for a mistrial either after seeing the defense's strategy or out of fear that the jury was likely to acquit.

### Factual Background

Prior to the first trial, Simon filed a motion *in limine* to exclude any evidence of: (1) Simon's prior warrants, arrests, or convictions; (2) any collateral crimes, wrongs, or misconduct by Simon, including those mentioned in a recorded statement to a detective referencing whether he was in a gang, that he was not supposed to be on Capital Inn property, that there were warrants against him, that he had been in prison, and his prior drug problems and offenses; and (3) his current or past custody status. The State consented to the motion *in limine* with the caveat that the State would be allowed to use evidence of Simon's prior offenses if he testified.

At trial, the prosecutor requested permission to play the recorded interview of Simon that was referenced in the motion *in limine*. Prior to the playing of the recording, Simon's counsel objected based on his knowledge that Simon's statement referenced matters that were to be excluded under the trial court's ruling on the motion *in limine*. The prosecutor replied that the State had "made every attempt to edit out any and all of those issues" and had invited the defense counsel to provide edits prior to trial. The trial court allowed the State to play the recorded interview based on its understanding that the statement had been edited in a manner consistent with the ruling on the motion *in limine*.

While the recording was playing, Simon's counsel asked to approach the bench and stated:

> Judge, the question that was just asked during the video was: Do you have any tattoos? And he said; [sic] I got these in prison. I'm going to object at this point. That's a reference to a prior bad act. That is extremely prejudicial against my client. I'm also going to move for a

mistrial on those grounds in that we do not believe that we can go forward and receive a fair trial here. We've just had a reference that he's been in prison before.

Both the prosecutor and judge indicated that they did not hear the reference, but the judge took a recess to listen to the recording. After listening to the recording again, the judge noted that there was a reference to Simon getting tattoos in prison. The prosecutor stated that he had not previously heard this comment during earlier reviews of the statement and that its inclusion "was an oversight[.]"

The trial court denied Simon's request for a mistrial, noting that the jury did not appear to have any kind of reaction to the reference; that it was "very difficult to understand" Simon on the recording; that the reference was "very muffled," did not indicate what Simon was in prison for, and was brief; and that there was already evidence in front of the jury that Simon was, at some point, arrested and taken into custody. The trial court found "that the State's inclusion of this part of the tape was not malicious" and noted "that the defense was given the opportunity to provide the State their own specific edits and declined to do so." However, the trial court also admonished the State to not refer to Simon's prison tattoos again and that "any other slip-ups" may cause a cumulative effect and rise to the level of prejudice requiring a mistrial.

After defense counsel declined the trial court's offer to give a curative instruction to the jury, the State requested a short recess to remove the prison reference and confirm the recording otherwise complied with the ruling on the motion *in limine*. The trial court denied the State's request, stating that the State had ample time to edit the recording and that the court would

declare a mistrial if there were any more errors.

The State resumed playing the recording, and Simon's counsel again objected when Simon was heard stating on the recording that he "took a lick for a carjacking charge." The prosecutor replied that he had noted to cut out that reference. Out of the presence of the jury, the trial court granted the defendant's motion for mistrial.

Following the mistrial, Simon filed a motion to dismiss with prejudice, arguing that the Double Jeopardy Clause barred his retrial because the prosecutor's conduct was intended to provoke or goad Simon into requesting a mistrial after seeing the defense's trial strategy. The State responded that the mistakes in editing the recording were "simple prosecutorial error" and not intended to "provoke, goad, or otherwise coerce the defendant to request a mistrial." The State further stated that it had reviewed the recorded interview multiple times to identify remarks to be edited, asked for defense counsel's input on which portions needed to be redacted, sent the recorded interview to be edited by a third party, and then reviewed the edited recording. After discovering a reference had failed to be removed, the prosecutor sent the disc back to the third party to be corrected and reviewed the final copy immediately before trial, making additional corrections before playing the recording for the jury.

The trial court denied Simon's motion, finding that "the State's failure to edit certain portions of [Simon]'s statements was not intentional and done in bad faith." The court noted that "the State had voluntarily agreed to edit several portions of the statement and in most cases had done so. Further, defense counsel was given the opportunity to review the statement prior

to its playing and declined[.]" The court continued:

> In light of the strength, and emotional nature, of the testimony introduced prior to the Defendant's statement, the State had no motivation to "goad [Simon] into requesting a mistrial." The Court cannot find the "underlying error [was] motivated by bad faith or undertaken to harass or prejudice' [Simon], but rather was mere negligence. *United States v. Martin*, 561 F.2d 135, 139 (8th Cir. 1977) (internal quotations and citations omitted).

### Legal Background

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution "protects a criminal defendant from repeated prosecutions for the same offense." *State v. Willers*, 785 S.W.2d 88, 90 (Mo. App. S.D. 1990) (citing *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)). Jeopardy attaches when "the jury is impaneled and sworn." *Id.* (citing *Crist v. Bretz*, 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978)). "Following the attachment of jeopardy, if a mistrial is declared and the jury is discharged, a defendant may be retried in one of two circumstances." *Id.* (citing *State v. Fitzpatrick*, 676 S.W.2d 831, 834 (Mo. banc 1984)). One of these circumstances is where "the defendant requests or consents to the mistrial." *Id.* (citation omitted).

■ However, double jeopardy will bar successive prosecutions "if the defendant's mistrial request was motivated by prosecutorial conduct which was intended to goad the defendant into requesting a mistrial[.]" *Id.* (citation omitted); *accord Kennedy*, 456 U.S. at 676, 102 S.Ct. 2083; *State v. Abdelmalik*, 273 S.W.3d 61, 67 (Mo. App. W.D. 2008) (citing *State v. Barton*, 240 S.W.3d 693, 701 (Mo. banc 2007)).

"The burden is on the defendant to prove that this request for a mistrial was the result of erroneous prosecutorial conduct calculated to coerce the defendant into requesting a mistrial." *Abdelmalik*, 273 S.W.3d at 67 (citation omitted). "[T]he court must make a finding of fact, 'inferring the existence or nonexistence of intent from objective facts and circumstances' that surround the proceedings." *State v. Barriner*, 210 S.W.3d 285, 308 (Mo. App. W.D. 2006) (quoting *State v. Clover*, 924 S.W.2d 853, 857 (Mo. banc 1996) (quoting *Kennedy*, 456 U.S. at 675, 102 S.Ct. 2083)).

■■ Whether a defendant's retrial is barred by the Double Jeopardy Clause is a question of law reviewed *de novo. Id.* at 307. However, we defer "to the trial court's factual findings and credibility determinations[.]" *State v. Sisco*, 458 S.W.3d 304, 312 (Mo. banc 2015) (Reviewing court deferred to trial court's factual findings but reviewed *de novo* whether constitutional right was violated.); *see also Barton*, 240 S.W.3d at 702 (noting in appeal alleging that prosecutor engaged in misconduct to provoke the defendant to request a mistrial for the purpose of avoiding an acquittal that the motion court made no findings on that point).

### Analysis

■ Here, Simon requested the mistrial and therefore may be retried unless his "request was motivated by prosecutorial conduct which was intended to goad the defendant into requesting a mistrial[.]" *Willers*, 785 S.W.2d at 90 (citation omitted). In ruling on Simon's motion to dismiss, which argued that the State intended to provoke Simon into requesting a mistrial in order to see the defense's strategy and correct any deficiencies in its case, the court found "that the State's failure to edit certain portions of [Simon]'s statements was not intentional and done in bad faith."

*See Barriner*, 210 S.W.3d at 308 (The court must make a finding of fact inferring intent from the proceedings.). "[W]e find nothing in the record to indicate any bad faith or intent to undermine [Simon]'s rights against double jeopardy" in contradiction of the trial court's finding. *See Abdelmalik*, 273 S.W.3d at 67 (stating same). Rather, the State had voluntarily agreed to the motion *in limine* and to edit the recording prior to trial in accordance with that ruling. The State also asked prior to trial for defense counsel's input on which portions needed to be redacted and requested a recess after the first objectionable reference to ensure that there were no further issues.[2]

Simon nevertheless argues on appeal that his retrial should have been barred because the prosecutor acted "to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." *Barton*, 240 S.W.3d at 702 (citing *United States v. Wallach*, 979 F.2d 912, 916 (2nd Cir. 1992)).[3] However, like the defendant in *Barton*, Simon has failed to show that the prosecutor acted with such motivation. The trial court specifically stated in its ruling that "[i]n light of the strength, and emotional nature, of the testimony introduced prior to the Defendant's statement, the State had no motivation to 'goad the Defendant into requesting a mistrial.'"

A review of the trial proceedings supports this statement. At the time that the mistrial was declared, the victim and four members of the police department had testified. The victim's testimony had established the details of the rape that had occurred in the apartment, identified Simon as a participant and the role he played, and addressed the items stolen from her. The jury had also heard that an ambulance transported the victim to a hospital, where a sexual assault exam was completed by a forensic nurse. The responding officer testified that the victim's hair was wet, that she was visibly upset, and that she complained of head pain. The victim had taken the officer to the apartment, and he arranged for the scene to be secured. A sex crimes unit detective who responded to the scene testified to several facts that corroborated the victim's account, including that the apartment was

**2.** *Martin*, the primary case relied on by Simon, is factually similar in that the jury was exposed to statements made by the defendant in grand jury testimony that touched upon topics that had been excluded pursuant to the trial court's ruling on a motion *in limine*. 561 F.2d at 137. However, the similarities between the two cases end there. In *Martin*, the prosecutor's misdeeds went beyond issues relating to the motion *in limine* as the government also presented several other improper and prejudicial remarks made during the grand jury proceedings. The *Martin* court found the breadth of the government's conduct was "at a minimum ... gross negligence." *Id.* at 140. In contrast, there is no evidence that the prosecutor in the present case was grossly negligent. As the trial court noted, the prosecutor attempted to edit the recording in accordance with the court's ruling on the motion *in limine*, offered Simon's counsel the opportunity to propose their edits and requested a recess in order to verify the accuracy of the edits to the remainder of the recording after the first inadmissible statement was played.

**3.** The State argues that Simon is only entitled to plain error review of his argument that the prosecutor acted *in order to prevent an acquittal* because the argument was not made in Simon's motion to dismiss and the scope of his objection cannot be broadened on appeal. *See State v. Johnson*, 207 S.W.3d 24, 43 (Mo. banc 2006) ("An appellant cannot broaden the scope of his objections on appeal beyond that made in the trial court." (citation omitted)). Because Simon has failed to make the required showing and we find no error, it is unnecessary for us to consider the State's argument, as our conclusion on this point is not affected by the standard of review applied.

laid out as the victim described and that pornographic videos and a maroon washcloth described by the victim were located in the apartment. The detective also testified to finding a copy of a lease with Simon's name on it, as well as several pieces of mail bearing his name, within the apartment. The detective later created a photo array and presented it to the victim. Another sex crimes unit detective testified that he obtained a buccal standard DNA swab from the victim to compare to the DNA collected during her forensic exam [4] and obtained a copy of the lease from the apartment complex, which listed Simon as the sole occupant at the time the offense was committed. In light of the evidence that had been presented to the jury prior to the mistrial being declared, a "conclusion that the prosecutor intended to prevent an acquittal" is simply not supported by this record. *See id.* (stating same).

Based on the trial court's findings and a review of the trial proceedings that occurred prior to the trial court granting the mistrial, we do not find that the State's actions relating to the editing of Simon's recorded statement were done with the purpose to provoke Simon into moving for a mistrial after seeing the defense's strategy or out of fear that the jury was likely to acquit. The trial court did not err in denying Simon's motion to dismiss, and Point I is denied.

## B. Count Dismissal

▇ Simon's second point on appeal alleges that the trial court plainly erred in submitting two counts to the jury based on Simon's role as an accomplice to the acts of

4. The State stated in its opening statement that it intended to offer evidence that Simon's DNA matched the DNA in the seminal fluids from the vaginal swabs taken from the victim. There is no basis to believe that this evidence would not have been admitted had the first

the other perpetrator, arguing that the submission of those counts was barred because they had been orally dismissed by the prosecutor.

## Factual Background

During the instructions conference, the prosecutor objected to the necessity of including the name of the other perpetrator in the verdict directors for the two counts relating to Simon's role as an accomplice to forcible rape and sodomy. The trial court explained to the parties its view that the MAI instructions required the name of the other perpetrator, if known, to be included in the verdict directors. In the context of this discussion, the following exchange took place:

PROSECUTOR: Judge, given that the Court's inclusion of the specific name,[5] I don't think we can meet our burden on Counts III [forcible rape] and IV [forcible sodomy], and I think that [the] State would dismiss those two counts.

THE COURT: [Defense counsel], did you hear that?

DEFENSE COUNSEL: Yes, I did. We have no objection.

PROSECUTOR: *I apologize, but just thinking about it at this point.*

THE COURT: No apologies necessary. Okay. So that changes up—how do you guys want to call the counts since some are being removed. Do you still want to call them as they were originally charged?

PROSECUTOR: I would prefer just call them 1, 2, 3, 4.

trial continued, as it was in fact admitted at the second trial.

5. The trial court ultimately decided that it was not required to include the other perpetrator's name in the verdict directors.

THE COURT: Is that a problem since they're charged? I'm asking because I don't know the answer to that.

DEFENSE COUNSEL: Right. That's my thought, Judge, I don't know if we have a jury return a guilty verdict to Count II—

THE COURT: That's not really—that's been dismissed. I think we have to keep the same counts. Okay. So what I'm going to do, I'm going give the packet back to Wade to remove those two counts.

PROSECUTOR: We'll just leave them in, Judge. Keep them in and say we'll move forward because I think that really, so now we—strike that. Strike my prior request and we'll move forward.

THE COURT: All right. Instruction Number 1 will be 302.01. . . . Instruction Number 9 is the verdict director for Count III. Instruction Number 10 is the converse and refers back to Instruction Number 9. Instruction Number 11 is the verdict director for Count IV. Instruction Number 12 is the converse, which refers back to Instruction Number 11. . . . And then there are the verdicts for each of the six counts.

Any objection on behalf of the defendant with respect to the substance or the numbering of the instructions?

DEFENSE COUNSEL: No, Your Honor.

(emphasis added).

## Legal Background

 Simon did not object to the submission of all counts to the jury, including the two counts at issue here, and thus this alleged error was not preserved for appeal and may only be reviewed for plain error. *See State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009) (citation omitted); Rule 30.20. The exercise of plain error review requires an "evident, obvious, and clear" error that "facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted." *Id.* (citations and internal quotation marks omitted). If plain error is found, then the court must determine whether the error in fact resulted in manifest injustice or a miscarriage of justice. *Id.* at 607-08 (citation omitted).

The prosecuting attorney has the discretion to dismiss a charge. § 56.087.1.[6] The dismissal may be made orally by the prosecuting attorney in open court and, after jeopardy has attached, is with prejudice "unless the criminal defendant has consented to having the case dismissed without prejudice." §§ 56.087.1-56.087.2.

## Analysis

Simon asserts that the prosecuting attorney orally dismissed the two counts charging him as an accomplice to the criminal conduct of the other individual and thus argues that the submission of those counts was barred. *See* §§ 56.087.1-56.087.2; *State v. Willers*, 785 S.W.2d 88, 90 (Mo. App. S.D. 1990) (citing *Crist v. Bretz*, 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978)) (Jeopardy attaches when "the jury is impaneled and sworn."). However, the record reflects that the State never dismissed those counts. Rather, the prosecutor simply expressed an inclination to do so in response to the trial court's indication that it was going to require that the name of the other perpetrator be included in both verdict directors, a finding supported by his statement that he was "just thinking about" dismissing the two

**6.** All statutory citations are to the Revised Statutes of Missouri, 2000, as supplemented through December 31, 2016.

counts. After a discussion about how dismissing the charges would affect the numbering in the verdict directors, the State made clear that it would not be dismissing those two counts. While the record facially supports the finding that the prosecutor did not dismiss the relevant counts, this conclusion is further buttressed by the lack of objection or other reaction, such as surprise or confusion, from either the trial court or defense counsel after the prosecutor announced his decision. Simon's counsel also lodged no objection after the trial court's review of the substance and numbering of the instructions that followed, which included instructions pertaining to the allegedly dismissed counts. The error now alleged is not "evident, obvious, and clear[,]" and Simon has not facially established "substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted." *See Baumruk*, 280 S.W.3d at 607 (citations and internal quotation marks omitted); Rule 30.20.[7] Point II is denied.

## CONCLUSION

We find no error and affirm the judgment of the trial court.

All concur.

7. The cases relied on by Simon are not relevant to the issue of a dismissal by a prosecutor. In *Barnes v. State*, the trial court sustained the defendant's motion for a judgment of acquittal and then overruled its own ruling after the close of all the evidence. 9 S.W.3d 646, 647-48 (Mo. App. E.D. 1999). This ruling was reversed on appeal based on double jeopardy grounds. *Id.* at 650-51. In *Smith v. Massachusetts*, a state trial judge entered a midtrial judgment of acquittal on one count and did not reserve the right to reconsider the ruling or indicate that the ruling was not final, so double jeopardy barred the trial

court from reconsidering the acquittal after the defendant rested. 543 U.S. 462, 469-75, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005). Notably, the trial courts in the cases cited were obligated to rule on motions presented by the defendants alleging the State had not presented sufficient evidence to support certain charges and, after ruling on the motions, had proceeded to the next stage of the trial. Here, the prosecutor could have dismissed the charges without a ruling by the trial court and was simply expressing his inclination to do so if the name of the other perpetrator had to be included in the instructions.