# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00685-COA

**TIMOTHY SCOTT BEASLEY A/K/A TIMOTHY S. BEASLEY A/K/A TIMOTHY BEASLEY**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/05/2016 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSEPH SCOTT HEMLEBEN |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/31/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Following his convictions for burglary of a dwelling, aggravated stalking, and aggravated assault, Timothy Beasley appeals the judgment of the Harrison County Circuit Court denying his motion for a new trial, arguing that the jury's verdict is against the overwhelming weight of the evidence. In a separate pro se brief, Beasley alleges ineffective assistance of trial counsel.[1]

---

[1] Beasley filed his brief without permission from this Court.

¶2.    Finding no error, we affirm.

FACTS

¶3.    This appeal stems from an incident that occurred on May 9, 2015, in Gulfport, Mississippi.  Lori Ehlers, Beasley's girlfriend of ten to fifteen years, had an order of protection against him that included her home, her person, and both of her parents.  While at dinner that night, Lori's mom, Elaine Ehlers, received text messages and a voice mail from Beasley stating that he was headed to Lori's home to "put down" a cat that the two had owned together.  After receiving those messages, Lori, Elaine, and Vernon Ehlers, Lori's father, returned to Lori's home.  Upon arriving, they did not notice anything out of the ordinary and proceeded inside.  Lori had video surveillance at her home, and there is video footage of the three arriving.  According to all three, Beasley jumped out of either the closet or the hallway with a knife in one hand and a pipe wrench in his other hand and stated something to the effect of, "now I can get all three of you."[2]

¶4.    Vernon testified that, fearing for his family's safety, he hit Beasley over the head with a cat's scratching post as Beasley pushed Elaine to the ground.  A struggle then ensued, and Beasley lost control of the knife, but was able to strike Vernon several times with the pipe wrench.  Vernon stated that Elaine was able to get free and escaped through the front door but Beasley followed her.  The surveillance footage showed Elaine leaving the property going in the direction of the neighbor's house, and Beasley exited shortly after, armed with a hammer.  Vernon was then shown on the video going outside, but then he retreated back

_____

[2] Lori's, Vernon's, and Elaine's exact wording differed as to their recollection of what Beasley said and the exact location from which he appeared.

2

inside as Beasley came back to the home. Beasley can then be seen breaking the glass of the front door with the hammer. Afterward, Beasley left the scene, and the police arrived.

¶5. According to Officer Bradley Sumrall of the Gulfport Police Department, Vernon's head was soaked with blood, and he had sustained several injuries that required medical treatment. Beasley was arrested the following day.

¶6. In Beasley's taped interview with police, he stated that he was just trying to talk to the Ehlers in order to get some money that was owed to him, and to retrieve some of his personal property from Lori's home. He stated that he simply wanted to talk, and Vernon hit him first, which sparked the fight. He also stated that, because of the protection order against him and Lori's changing her cell phone number, the two communicated by exchanging messages via a storage unit and Lori's mailbox. During the interview, Beasley admitted that he entered Lori's home through an unlocked window[3] and that he was armed with a pipe wrench. Lori testified that Beasley did not have a key to her home and that she did not give him permission to enter.

¶7. Beasley was indicted for burglary of a dwelling, aggravated stalking, and aggravated assault. Beasley opted for a trial. During the trial, Lori, Vernon, Elaine, Officer Sumrall, and Investigator Alvin Kingston testified for the State. At the trial's conclusion, Beasley was convicted on all counts and sentenced as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2015) to twenty years for burglary, five years for aggravated stalking, and fifteen years for aggravated assault, with each sentence to be served

---

[3] Beasley also made a call from jail and told an unidentified person that he gained entry into Lori's home through a window in the back of her house.

3

concurrently in the custody of the Mississippi Department of Corrections (MDOC), without the possibility of probation or parole.

¶8.     Beasley filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV), which was denied.  This appeal followed.

DISCUSSION

*I.     Sufficiency and Weight of the Evidence*

¶9.     In challenging his convictions, Beasley erroneously combines arguments regarding the *overwhelming weight* of the evidence, his sole issue on appeal, with arguments that address the *legal sufficiency* of the evidence.  As such, we address both arguments in this opinion.   The standards of review when addressing weight of the evidence and legal sufficiency of the evidence are succinctly addressed by the Mississippi Supreme Court in *Bush v. State*, 895 So. 2d 836 (Miss. 2005), *abrogated in part on other grounds by Little v. State*, 2014-CT-01505-SCT, 2017 WL 4546740 (Miss. Oct. 12, 2017).  In addressing the overwhelming weight of the evidence, the court stated:

> When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that *to allow it to stand would sanction an unconscionable injustice . . . .* [T]he evidence should be weighed in the light most favorable to the verdict.

*Id*. at 844 (¶18) (internal citations and quotation marks omitted) (emphasis added).  In addressing the sufficiency of the evidence, the court stated that:

> [I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, *the critical inquiry is whether the evidence shows beyond a reasonable doubt that accused committed the act charged, and that he did so under such*

4

*circumstances that every element of the offense existed*; and where the evidence fails to meet this test it is insufficient to support a conviction. However, this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id*. at 843 (¶16) (emphasis added).

¶10. According to Beasley, the "State failed to establish beyond a reasonable doubt that [he] committed the crimes of [b]urglary, [a]ggravated [s]talking[,] and [a]ggravated [a]ssault." He also argues that based on the evidence presented at trial, the court erred in denying his motion for a new trial. The State counters that the trial court did not err in denying Beasley's motion for a new trial, as the jury's verdict was simply not against the overwhelming weight of the evidence, and the evidence was sufficient to support his convictions.

### A. Burglary and Aggravated Stalking

¶11. Regarding his burglary and aggravated-stalking convictions, Beasley alleges that he should not have been convicted of those crimes because he and Lori were in a serious relationship; he still had personal property at her house, and he and Lori were in continuous contact during the relevant time period. Consequently, he asserts that the evidence was insufficient to establish beyond a reasonable doubt that he committed the crimes and that the jury's verdict was against the overwhelming weight of the evidence.

¶12. Count I of the indictment, charging Beasley with burglary, provided in relevant part that Beasley "did unlawfully, willfully, feloniously and burglariously break and enter the

dwelling house of Lori Ehlers . . . with the intent to violate Order of Protection, Domestic Abuse Protection Order . . . ."

¶13.  Mississippi Code Annotated section 97-17-23(1) (Rev. 2014) provides, in part:

> Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.

¶14.  The State notes that "the elements of burglary of a dwelling [are]: (1) the unlawful breaking and entering of a dwelling; and (2) the intent to commit some crime when entry is attained." *Cavitt v. State*, 159 So. 3d 1199, 1202 (¶10) (Miss. Ct. App. 2015).  During Beasley's recorded interview with Investigator Kingston, he admitted that he entered Lori's house through an unlocked rear window, armed with a pipe wrench.  He also admitted that he knew the order of protection—forbidding him from going to Lori's home—was still in place.  Lori testified that she never told Beasley that he could enter the home, that she had all the locks changed, and that she had not given Beasley a key.  The State argues that the evidence at trial clearly supported the verdict and was not so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.  We agree.

¶15.  Likewise, the State argues that the evidence presented supported Beasley's aggravated-stalking conviction.  Count II of the indictment states, in relevant part, that Beasley:

did willfully, unlawfully, feloniously and purposely engage in a course of conduct directed at Lori . . . knowing that the conduct would cause [her] . . . to fear for her own safety, or to fear damage or destruction of her property, when he . . . had previously been convicted of Stalking within seven (7) years of the offense charged herein; to-wit:

(1) In the Municipal Court of Gulfport, Mississippi, he . . . was convicted of Stalking, on July 17, 2014, said offense having occurred on May 5, 2014, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

¶16.    Mississippi Code Annotated section 97-3-107(1)(a) (Rev. 2014) provides, in part:

Any person who purposefully engages in a course of conduct directed at a specific person, or who makes a credible threat, and who knows or should know that the conduct would cause a reasonable person to fear for his or her own safety, to fear for the safety of another person, or to fear damage or destruction of his or her property, is guilty of the crime of stalking.

¶17.    Section 97-3-107(2)(a) states:

A person who commits acts that would constitute the crime of stalking as defined in this section is guilty of the crime of aggravated stalking if any of the following circumstances exist:

(i) At least one (1) of the actions constituting the offense involved the use or display of a deadly weapon with the intent to place the victim of the stalking in reasonable fear of death or great bodily injury to self or a third person; [or]

(ii) Within the past seven (7) years, the perpetrator has been previously convicted of stalking or aggravated stalking under this section or a substantially similar law of another state, political subdivision of another state, of the United States, or of a federally recognized Indian tribe, whether against the same or another victim[.]

¶18.    As stated, Elaine testified to receiving the text messages and a voice message from Beasley on the night of the incident, indicating that he was going to "put down" Lori's cat. The State asserts that the text messages and voice message clearly demonstrate a course of conduct that would cause a reasonable person to fear for his or her own safety, the safety of

7

another person, or damage or destruction of his or her property. In addition, based on the testimony at trial, the State asserts that Beasley broke into Lori's house, jumped out of a closet holding a pipe wrench and a knife, a deadly weapon, and shouted "now I can get all three of you." According to Lori, Beasley terrified her and made her fear that he would hurt her and/or her parents. Finally, the State introduced an abstract at trial evidencing that Beasley had previously been convicted of stalking on July 17, 2014. Based on the evidence presented at trial, the jury's verdict was not against the overwhelming weight of the evidence, and the evidence supported his conviction.

### B. Aggravated Assault

¶19. Turning now to Beasley's aggravated-assault conviction, he contends that he should not have been convicted of aggravated assault because Vernon testified that he hit Beasley first, as soon as he came out of the closet. In addition, he contends that Vernon was not seriously injured, as he did not need stitches or staples and initially refused medical attention.

¶20. The State responds that the evidence presented was more than adequate to convict Beasley of aggravated assault, as substantiated by the indictment and the elements of the crime itself.

¶21. Count III of the indictment states, in relevant part, that Beasley:

> did unlawfully, feloniously, willfully, purposefully[,] and knowingly attempt to cause bodily injury to . . . Vernon . . . by a means likely to produce death or serious bodily harm, to-wit: by striking . . . Vernon . . . with a pipe wrench, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

¶22. Mississippi Code Annotated section 97-3-7(2)(a) (Rev. 2014) provides, in relevant

8

part:

> A person is guilty of aggravated assault if he (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]

¶23. The State notes Vernon's testimony that Beasley jumped out of the closet with a butcher knife in one hand and a pipe wrench in the other hand. In addition, Vernon, Lori, and Elaine all testified that Beasley stated some form of, "now I can get all three of you." According to Vernon, Beasley then lunged toward Elaine and pushed her down. At that point, Vernon struck Beasley with a cat's scratching post, causing him to drop the knife. Beasley then proceeded to strike Vernon in the head with the wrench. Thus, the State is correct in its assertion that the evidence at trial supported Beasley's conviction. Although Beasley argues that the State failed to establish that serious bodily injury occurred, there was testimony demonstrating that serious bodily injury did in fact occur. For instance, Officer Sumrall testified that Vernon had blood coming from his head, soaking his entire scalp. Likewise, a photograph introduced into evidence depicts a large gash on Vernon's head, and Vernon testified that his face was covered with blood and that he went to the hospital and underwent X-rays and an MRI.

¶24. Additionally, the State argues that it does not matter whether Vernon suffered serious bodily injury, as Beasley clearly attempted to assault him, and the means he used were likely to produce serious injury. As this Court has held, "[t]he crime of aggravated assault includes attempt as one of the elements of the crime." *Stringer v. State*, 862 So. 2d 566, 567 (¶6)

9

(Miss. Ct. App. 2004). And, as this Court has further held, the State is not required to prove that the victim suffered serious bodily injury; rather, "the proper inquiry is whether the bodily injury was caused with other means likely to produce serious harm." *Riggs v. State*, 967 So. 2d 650, 653 (¶13) (Miss. Ct. App. 2007). Consequently, this issue is without merit, as the evidence supported Beasley's conviction for aggravated assault, and the jury's verdict was not against the overwhelming weight of the evidence.

¶25. Here, the trial court did not err in denying Beasley's motion for a new trial, as the jury's verdict was not against the overwhelming weight of the evidence, warranting an invasion of the jury's province. We also find that the evidence was legally sufficient to support each of Beasley's convictions. Therefore, we affirm the circuit court's judgment.

## II. Ineffective Assistance of Counsel

¶26. Following oral argument, Beasley, proceeding pro se and without permission of the Court, filed a motion—which we treat as a supplemental brief—alleging that his trial counsel was ineffective. Since the briefing-schedule deadlines had passed when Beasley filed his supplemental brief, it is not properly before the Court for consideration. Nevertheless, the State, without direction from this Court, responded to Beasley's supplemental brief. The State argues that the issue presented in Beasley's supplemental brief is both inappropriate for review on direct appeal and without merit. We agree with the State that the issue is inappropriate for review in this direct appeal, and we decline to consider the merits of it, except to note the relevant law and to make a few observations as to what the record shows.

> A claim of ineffective assistance of counsel on direct appeal should be addressed only when (1) the record affirmatively shows ineffectiveness of

10

constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge. Therefore, ineffective assistance claims are more appropriately brought during post-conviction proceedings because, during direct appeals, the Court is limited to the trial court record in its review of the claim, and there may be instances in which insufficient evidence exists within the record to address the claim adequately.

*Johnson v. State*, 196 So. 3d 973, 975 (¶7) (Miss. Ct. App. 2015) (internal citation and quotations omitted).

¶27. In support of his ineffective-assistance-of-counsel claim, Beasley makes several allegations which, based on our caselaw, appear to fall squarely within the ambit of trial strategy. He also claims that his trial counsel (1) was not prepared for trial, (2) was unreasonably inaccessible, (3) was only interested in talking to him about a plea and acted more like a prosecutor than his defense counsel, (4) was not interested in the evidence that Beasley had to present, and (5) failed to obtain discovery and discuss it with him. Further, Beasley makes some claims that are clearly belied by the record.

¶28. The parties have not stipulated that the record is adequate to address Beasley's claim that his trial counsel was ineffective. In the absence of such stipulation, we have reviewed the record, and based on the application of the standard set forth in *Strickland*,[4] we find that the record does not affirmatively show ineffective assistance of counsel of constitutional dimensions. "Where the record cannot support an ineffective-assistance-of-counsel claim

---

[4] "The benchmark for judging any claim of ineffectiveness of counsel must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. The test is two pronged: The defendant must demonstrate that his counsel's performance was deficient, and that the deficiency prejudiced the defense of the case." *Wilcher v. State*, 863 So. 2d 719, 733 (¶30) (Miss. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief." *Johnson*, 196 So. 3d at 975 (¶8). Therefore, we deny relief without prejudice to Beasley's right to petition the Mississippi Supreme Court for permission to proceed in the circuit court with a motion for post-conviction relief, addressing the issue of ineffective assistance of counsel.

¶29.  **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. TINDELL, J., NOT PARTICIPATING.**