# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00899-COA

**ROBERT SABAR McGILVARY A/K/A ROBERT McGILVARY**                                   APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                   APPELLEE

DATE OF JUDGMENT:                05/17/2018
TRIAL JUDGE:                     HON. ROBERT B. HELFRICH
COURT FROM WHICH APPEALED:       FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                 BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: BILLY L. GORE
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 02/04/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., GREENLEE AND TINDELL, JJ.

### TINDELL, J., FOR THE COURT:

¶1.     On May 10, 2018, a jury convicted Robert McGilvary of one count of aggravated stalking. The Forrest County Circuit Court sentenced McGilvary to serve five years in the custody of the Mississippi Department of Corrections (MDOC). McGilvary filed an unsuccessful motion for judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, and he now appeals to this Court. Finding no error, we affirm McGilvary's aggravated-stalking conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     Heather Morgan peacefully worked for many years cutting hair at His & Hers Salon

in Petal, Mississippi. Morgan's peace came to an end one morning in 2008 when McGilvary came into His & Hers Salon, and she cut his hair. Morgan had no prior relationship with McGilvary and had never met him until that day. But after this first haircut, McGilvary became enamored with Morgan, and he began constantly visiting the salon and asking to see Morgan. McGilvary unsuccessfully attempted to start a romantic relationship with Morgan, but when she expressed no interest in McGilvary, he began a pattern of irrational and disturbing behavior.

¶3.     In late 2008, McGilvary discovered that Morgan was taking an upcoming vacation and came to the salon to bring Morgan change for her to take with her on vacation. During this visit, McGilvary cornered Morgan and told her that he wished to build a house on a hill to put Morgan in so that he could always watch her. Morgan then became frightened by McGilvary's statement and begged McGilvary to leave her alone. Following this incident, Morgan's boss banned McGilvary from returning to the salon.

¶4.     Undeterred by his banishment, McGilvary began repeatedly calling the salon and asking to speak to Morgan. When these attempts to contact Morgan failed, McGilvary would then call pretending to be other clients in order to schedule appointments with Morgan. McGilvary again attempted to visit Morgan at the salon, and Morgan became so frightened that her coworkers called the police. When the police arrived, McGilvary was arrested. In their investigation, the police found McGilvary's car hidden between two buildings. The police also found duct tape, money, knives, guns, and ammunition inside McGilvary's car. Morgan then became very anxious and scared to go to work, fearing that McGilvary may

2

show up.

¶5.　Having been banned from contacting Morgan at work, McGilvary found Morgan's parents' home phone number and repeatedly called Morgan and her father, expressing his affection for her.　On one occasion, McGilvary even called Morgan's parents to ask if he could see Morgan and bring her a dog.　McGilvary's constant phone calls caused Morgan to change her phone number three times over the course of seven years.

¶6.　McGilvary also began following Morgan, often showing up at places where Morgan was located without her telling him.　For example, one night McGilvary followed Morgan and her boyfriend to Walmart.　As they were walking, McGilvary suddenly drove up behind Morgan and her boyfriend in his vehicle and began yelling at Morgan.　McGilvary then blocked their car, preventing the couple from leaving their parking spot.　On a separate occasion, McGilvary followed Morgan to Sonic one morning as she was driving to work. McGilvary again attempted to block her vehicle from leaving.　Another morning, Morgan took her vehicle to a repair shop, and she returned to find a note on her vehicle from McGilvary with a phone number and a message on the note.　In the hopes that McGilvary would not be able to follow her, Morgan would routinely drive different vehicles. McGilvary's behavior also caused Morgan to fear for her life, and Morgan became afraid to leave her home.　She installed a security system in her home and carried a gun and pepper spray with her everywhere she went.

¶7.　McGilvary was charged in municipal court with three counts of stalking Morgan for incidents that occurred on April 22, 2009, May 25, 2010, and November 16, 2010.　On

January 7, 2011, McGilvary was convicted and sentenced to serve six months in jail for each count. After his conviction in municipal court, McGilvary's harassment of Morgan stopped, and he made no other attempts to contact her until 2015.

¶8. On December 9, 2015, Morgan was working in the salon when a young man came in and told Morgan that there was a note on her vehicle. Morgan immediately went to her vehicle and found the note, which had a handwritten message that said, "Call me 601 600 1470 I'm not mad at you." Fearing that McGilvary was trying to contact her again, Morgan called Detective Matthew Hiatt of the Petal Police Department, who then came to the salon to investigate.

¶9. Detective Hiatt had not been involved with any incidents involving McGilvary and Morgan, but he was aware of McGilvary's prior harassment of Morgan. Hiatt felt that McGilvary posed a serious threat to Morgan and assured Morgan that he would keep Morgan and the salon safe if McGilvary tried to cause trouble. Upon arriving at the salon, Hiatt noticed that Morgan was shaking and visibly upset. Once Morgan told Hiatt about the note on her vehicle, he suspected that McGilvary must have placed it there. Hiatt called Detective Craig Locke to confirm that the phone number and note belonged to McGilvary.

¶10. After running a search on the phone number, Locke confirmed that it belonged to McGilvary. Locke soon located McGilvary in Jackson, Mississippi, and found his vehicle. Upon searching the vehicle, Locke found a pair of binoculars and a receipt for the binoculars from a Walmart in Hattiesburg, Mississippi, dated November 19, 2015. Locke also found a notepad in the vehicle with the same phone number from Morgan's note written several

4

times. After comparing the writing in this notepad to Morgan's note, Locke determined that the handwriting looked exactly the same. Finally, Locke found a cell phone in McGilvary's vehicle. After Locke dialed the phone number on Morgan's note, the cell phone in McGilvary's vehicle rang.

¶11. On September 27, 2017, McGilvary was indicted for aggravated stalking. Morgan, Hiatt, Locke, and McGilvary all testified at trial. McGilvary admitted that Morgan had cut his hair for the first time in 2008, and he repeatedly made trips to Petal to have her cut his hair after that. McGilvary also admitted to developing romantic feelings for Morgan and that these feelings caused problems between him and his girlfriend at the time. McGilvary confirmed that he was banned from the salon, but he denied following Morgan or contacting her after being banned. He testified that he had no further contact with Morgan other than through third parties.

¶12. McGilvary stated that on December 9, 2015, he was in Jackson at the Mississippi Prison Industries Corporation and did not go to Petal that day. Although he testified that he had gone to the Hattiesburg Walmart days before the incident, he did not acknowledge that he bought binoculars. McGilvary also confirmed that the phone and notepad Detective Locke found in his vehicle belonged to him. Specifically, McGilvary testified as follows:

[State:] You don't disagree that that's your notebook, do you?

[McGilvary:] Yeah, that's my notebook.

[State:] Okay. And you don't disagree that on that notebook you have at least two different pages the words ["C]all me 601-600-1470["]?

5

| [McGilvary:] | That's right. I wanted to testify in court. . . . |
| | |
| . . . . | |
| | |
| [State:] | Do you not agree that th[e] card, the note, the handwritten portion, says call me? |
| [McGilvary:] | Yeah, it says call me. |
| [State:] | It has your telephone number on it? |
| [McGilvary:] | Yeah. |
| [State:] | And says ["]I'm not mad at you["]? |
| [McGilvary:] | I'm not mad at you. That's right. |
| [State:] | And you just agreed with me that it was your handwriting, so tell me why you wrote I'm not mad at you. Who was that for? |
| [McGilvary:] | I wanted this girl to testify in court. |
| [State:] | What girl? |
| [McGilvary:] | Heather. |

¶13. After hearing all the evidence presented at trial, a jury convicted McGilvary of aggravated stalking on May 10, 2018, and the circuit court sentenced him to serve five years in the MDOC's custody. McGilvary filed a motion for a JNOV or, alternatively, a new trial, which the circuit court denied. McGilvary now appeals his conviction and sentence.

**STANDARD OF REVIEW**

¶14. When a defendant challenges the legal sufficiency of his indictment, we apply a de novo standard of review. *Beal v. State*, 86 So. 3d 887, 891 (¶9) (Miss. 2012). We review the circuit court's decision to give requested jury instructions for an abuse of discretion.

6

*Newell v. State*, 175 So. 3d 1260, 1273 (¶26) (Miss. 2015). Finally, "[i]n considering whether the evidence is sufficient to sustain a conviction, this Court employs a de novo standard of review. . . . Under this inquiry, all evidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence." *Green v. State*, 269 So. 3d 75, 79 (¶12) (Miss. 2018) (citations and internal quotation marks omitted).

## ANALYSIS

**I.      Whether the indictment is fatally defective for failing to include a "course of conduct" under Mississippi Code Annotated section 97-3-107 (Rev. 2010).**

¶15.    McGilvary first argues that his indictment was fatally defective because it failed to include all the essential elements of aggravated stalking. Specifically, McGilvary states that his indictment does not include a "course of conduct" as required by section 97-3-107.

¶16.    Section 97-3-107(1)(a) states,

> Any person who purposefully engages in a **course of conduct** directed at a specific person, or who makes a credible threat, and who knows or should know that the conduct would cause a reasonable person to fear for his or her own safety, to fear for the safety of another person, or to fear damage or destruction of his or her property, is guilty of the crime of stalking.

(Emphasis added).

¶17.    Section 97-3-107(2)(a)(ii) defines "aggravated stalking" as follows:

> A person who commits acts that would constitute the crime of stalking as defined in this section is guilty of the crime of aggravated stalking if any of the following circumstances exists:
>
> . . . .

7

Within the past seven (7) years, the perpetrator has been previously convicted of stalking or aggravated stalking under this section or a substantially similar law of another state, political subdivision of another state, of the United States, or of a federally recognized Indian tribe, whether against the same or another victim . . . .

¶18.   Further, section 97-3-107(8)(a) states,

"Course of conduct" means a pattern of conduct composed of a series of two (2) or more acts over a period of time, however short, evidencing a continuity of purpose and that would cause a reasonable person to fear for his or her own safety, to fear for the safety of another person, or to fear damage or destruction of his or her property. Such acts may include, but are not limited to, the following or any combination thereof, whether done directly or indirectly: (i) following or confronting the other person in a public place or on private property against the other person's will; (ii) contacting the other person by telephone or mail, or by electronic mail or communication as defined in Section 97-45-1; or (iii) threatening or causing harm to the other person or a third party.

McGilvary argues that his indictment cites only one specific act—the December 9, 2015 incident—and that one act does not constitute a "course of conduct" under the statute.

McGilvary's indictment states,

[McGilvary,] in Forrest County, Mississippi, on or about December 9, 2015, did willfully and unlawfully commit an act of stalking as enumerated in Section 97-3-107(1)(a) of the Mississippi Code of 1972, as amended, by engaging in a course of conduct directed at Heather Morgan, to wit: went to her place of employment and placed a note on her car, and Robert Sabar McGilvary knew or should have known that the conduct would cause a reasonable person to fear for his or her own safety, to fear for the safety of another person, or to fear damage or destruction of his or her property; and Robert Sabar McGilvary has been previously convicted of Stalking or Aggravated Stalking, whether against the same or another victim, within a seven year period, to wit:

1.    On January 7, 2011, in the Municipal Court of Petal, Mississippi, Robert Sabar McGilvary was convicted of Stalking, as evidenced by Case MC09-00142; and

2.  On January 7, 2011, in the Municipal Court of Petal, Mississippi, Robert Sabar McGilvary was convicted of Stalking, as evidenced by Case MC10-00243;

3.  On January 7, 2011, in the Municipal Court of Petal, Mississippi, Robert Sabar McGilvary was convicted of Stalking, as evidenced by Case MC10-00402 . . . .

¶19. "The purpose of an indictment is to furnish the defendant with notice and a reasonable description of the charges against him so that he may prepare his defense." *Goff v. State*, 14 So. 3d 625, 665 (¶175) (Miss. 2009). Accordingly, "[a]n indictment is required **only** to have a clear and concise statement of the elements of the crime with which the defendant is charged." *Id*. (emphasis added). The Mississippi Supreme Court has held that "an indictment that tracks the language of the statute is generally sufficient to inform the accused of the nature and cause of the accusation." *Warren v. State*, 187 So. 3d 616, 622 (¶11) (Miss. 2016).

¶20. Here, McGilvary's indictment almost identically tracks the language of the statute. The indictment states that McGilvary went to Morgan's place of employment and placed the note on her vehicle, two acts that set forth a course of conduct. The indictment also includes McGilvary's three prior stalking convictions on January 7, 2011, with each conviction involving Morgan. The fact that McGilvary was convicted of stalking Morgan on three separate occasions *in addition* to the foregoing incident further establishes the necessary course of conduct. Mississippi law does not require the State to specifically set forth all the evidence of the crime against the defendant in the indictment as long as the indictment gives the defendant adequate notice of his or her charges. *Jones v. State*, 856 So. 2d 285, 289-90

9

(¶¶13-14) (Miss. 2003). "So long as from a fair reading of the indictment[,] taken as a whole[,] the nature and cause of the charge against the accused are clear, the indictment is legally sufficient." *Harrison v. State*, 722 So. 2d 681, 687 (¶22) (Miss. 1998). Furthermore, "the ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." *Jones*, 856 So. 2d at 289 (¶11).

¶21. Taken as a whole, we find that McGilvary's indictment gave him adequate notice of his aggravated-stalking charge. The indictment provided a clear and concise description of McGilvary's charge, and it established a course of conduct by listing McGilvary's three prior stalking convictions against Morgan in addition to the foregoing incident. We therefore find that this issue lacks merit.

**II.    Whether the trial court erroneously gave the State's jury instruction S-1.**

¶22. McGilvary also challenges the circuit court's decision to admit the State's elements jury instruction, S-1. This instruction provided,

> If you find from the evidence in this case beyond a reasonable doubt that:
>
> 1)    ROBERT SABAR MCGILVARY on December 9, 2015, in Forrest County, Mississippi;
>
> 2)    Did intentionally and unlawfully go to the place of employment of Heather Morgan and placed a note on her vehicle;
>
> 3)    Which would make a reasonable person fear for her own safety, or for the safety of another person, or fear harm or damage to her property; and
>
> 4)    ROBERT SABAR MCGILVARY was previously convicted of Stalking in the Municipal Court of Petal,

10

Mississippi, within seven (7) years of December 9, 2015;

then you shall find the Defendant Guilty of Aggravated Stalking.

If the State failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant Not Guilty of Aggravated Stalking.

¶23. McGilvary argues that because his indictment alleged that he engaged in a course of conduct, the State's elements instruction should have included the words "course of conduct." Because the instruction contained no such language, McGilvary argues that the instruction constituted a constructive amendment to his indictment.

¶24. First, McGilvary failed to object to instruction S-1 at trial. This Court has held that when a defendant fails to object to a jury instruction at trial, the defendant is procedurally barred from challenging the instruction on appeal. *Jones v. State*, 238 So. 3d 1235, 1239 (¶10) (Miss. Ct. App. 2016). Therefore, McGilvary's second issue is procedurally barred.

¶25. Notwithstanding the procedural bar, we also find that the instruction does not constitute a constructive amendment. As the supreme court has explained,

A constructive amendment of an indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. A constructive amendment of an indictment is reversible per se. Reversal is automatic because the defendant may have been convicted on a ground not charged in the indictment.

*Graham v. State*, 185 So. 3d 992, 1001 (¶25) (Miss. 2016) (citations omitted). But "[n]ot all variances between the indictment and instructions constitute a constructive amendment." *Id*. Rather, courts must determine "whether the variance is such as to substantially alter the elements of proof necessary for a conviction." *Id*.

11

¶26. Here, the jury clearly convicted McGilvary based upon all the required elements of aggravated stalking, as stated in instruction S-1. The fact that the instruction lacks the specific language, "course of conduct," does not substantially alter the elements or proof necessary to find McGilvary guilty of aggravated stalking. Again, a "course of conduct" involves "a pattern of conduct composed of a series of *two (2) or more acts over a period of time*, however short, evidencing *a continuity of purpose* and that would cause a reasonable person to fear for his or her own safety . . . ." Miss. Code Ann. § 97-3-107(8)(a) (emphasis added). The instruction required the State to prove that on December 9, 2015, McGilvary intentionally and unlawfully went to Morgan's place of employment in Forrest County, found her vehicle, and placed a note on the vehicle, thereby making her fear for her safety. Instruction S-1 also cited McGilvary's three prior stalking convictions, which each involved Morgan. As stated above, the State's inclusion of the subject incident along with McGilvary's prior convictions against Morgan effectively established the requisite course of conduct. The State did not modify the "course-of-conduct" element or any of the essential elements of the crime by the language in the instruction. Rather, the instruction specified exactly *what* the alleged "course of conduct" involved. Thus, through instruction S-1, the State effectively laid out all the essential elements of the crime despite omitting the words "course of conduct." Therefore, we also find this issue to be meritless.

### III. Whether sufficient evidence existed to convict McGilvary of aggravated stalking.

¶27. Finally, McGilvary argues that the State presented insufficient evidence to sustain his aggravated-stalking conviction. Along the same vein as his two previous arguments,

12

McGilvary asserts that the State failed to prove a "course of conduct" and failed to allege a "course of conduct" as required by section 97-3-107.

¶28.    As this Court has acknowledged in *Beasley v. State*, 251 So. 3d 746, 749-50 (¶9) (Miss. Ct. App. 2017),

> [I]n considering whether the evidence is sufficient to sustain a conviction . . . the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed, and where the evidence fails to meet this test it is insufficient to support a conviction. However, this inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005), *abrogated on other grounds by Little v. State*, 233 So. 3d 288 (Miss. 2017)).

¶29.    At trial, the State and defense stipulated that McGilvary had three prior convictions of stalking Morgan in municipal court. The record also contains documentation of these three prior convictions, which occurred within seven years of the subject incident. Again, McGilvary's actions on that day in conjunction with these three prior convictions thereby establishes the requisite course of conduct. Based upon this evidence, we conclude that a rational trier of fact could have convicted McGilvary of aggravated stalking beyond a reasonable doubt. Accordingly, we find that the circuit court committed no error in denying McGilvary's post-trial motion.

**CONCLUSION**

¶30.    Upon review of the record, we find that McGilvary's indictment adequately notified

13

him of the aggravated-stalking charge and effectively established a course of conduct by including his three prior convictions and the foregoing incident. We also find that the State's instruction S-1 sufficiently covered all of the essential elements of the crime, and therefore, the circuit court was within its discretion in allowing the instruction. Finally, when viewing the evidence in the light most favorable to the prosecution, we find that the evidence properly supported McGilvary's conviction for aggravated stalking. We therefore affirm McGilvary's conviction and sentence.

¶31.   **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.   J. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**